G. S. *v.* T. S.
(8797)

FOTI, LAVERY and CRETELLA, Js.

Argued September 28—decision released November 9, 1990

*Bruce A. Chamberlain,* for the appellant (plaintiff).

*Peter W. Rotella,* with whom, on the brief, was *A. A. Washton,* for the appellee (defendant).

LAVERY, J. The plaintiff father appeals from a judgment in an action for dissolution of marriage in which custody of the minor children was awarded to the defendant mother. The plaintiff claims that the trial court abused its discretion (1) in awarding sole custody of the minor child H[1] to the defendant, (2) in basing its custody decision on facts not in evidence, and (3) in failing to consider him as a potential custodial parent.

We do not reach the plaintiff's specific claims because we find that the trial court abused its discretion in failing to appoint an attorney for the minor children.

The plaintiff raised the issue of counsel for the children in a pretrial motion. This motion was never addressed by either the court or the defendant, and the plaintiff did not pursue this motion at trial. Nevertheless, after a careful review of the record, we find that the trial court's failure to appoint counsel went to the vital issue of custody in this case. In a case such as this, where custody is contested and where allegations of child abuse, specifically allegations of sexual molestation, were known to the trial court prior to the commencement of trial and became abundantly clear during the first day of testimony, it was an abuse of discretion not to appoint counsel for the minor children. We are therefore compelled to address this important issue

---

[1] Due to the sensitive nature of this case, the parties and their children are referred to by initials.

in the interests of justice. Practice Book § 4185;[2] *Magnan* v. *Anaconda Industries, Inc.,* 193 Conn. 558, 577–78, 479 A.2d 781 (1984); *Batick* v. *Seymour,* 186 Conn. 632, 641, 443 A.2d 471 (1982); *Riccio* v. *Abate,* 176 Conn. 415, 418 n.1, 407 A.2d 1005 (1976); *State* v. *Rogers,* 18 Conn. App. 104, 111, 556 A.2d 1030 (1989).

The facts relevant to the disposition of this appeal are as follows. The plaintiff and the defendant were married on February 7, 1983, and two daughters were born to them, H, on April 26, 1982, and N, on July 2, 1986. The couple separated in the fall of 1988. Due to hostility exacerbated by the custody battle over H, there was no hope of reconciliation between the parties. On October 17, 1988, the plaintiff filed suit in New London Superior Court seeking dissolution of the marriage and joint custody of the two minor children. In November, 1988, the court, *Hendel, J.,* entered a pendente lite order awarding custody of both children to the defendant with reasonable rights of visitation to the plaintiff.

On April 20, 1989, the court, *Hurley, J.,* issued an ex parte order changing the custody of H to the plaintiff. That order was based on an affidavit by the plaintiff alleging that H was sexually molested on numerous occasions by the defendant's cousin, Larry Post, while she was in the defendant's custody. The affidavit also stated that these allegations were being investigated by the Groton police department and the department of children and youth services (DCYS) and that both agencies had suggested that H not be returned to the

---

[2] Practice Book § 4185 provides in relevant part: "The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court."

defendant's custody. Although a hearing date on the ex parte order was set for May 1, 1989, the hearing was never held.

From April until the end of trial before *Hon. Eli L. Cramer,* state trial referee, H resided with the plaintiff and N continued to reside with the defendant. The plaintiff sought sole custody of H alone until the end of the trial when he sought the custody of both children. At the time the ex parte order was entered, no counsel was appointed for H nor was any referral made to family relations for an investigation and study. On July 17, 1989, the plaintiff filed a motion for the appointment of counsel for both minor children. A review of the file fails to disclose whether action was ever taken on that motion, but in any event, counsel was not appointed for either of the two minor children during the trial.

A five day trial was held over the course of five months. During the first day of trial the plaintiff called three witnesses, Officer John Murphy of the Groton police department, Officer Herbert Soler of the Connecticut state police and Barbara Rucci, a social worker employed by the forensic mental health services, who was acting as sexual abuse counselor for H. The testimony of all three witnesses involved allegations of Post's sexual abuse of H.

The two police officers had interviewed H, the defendant, the plaintiff's parents, the defendant's mother and Post. Reports of those interviews were entered as exhibits. The defendant objected to the admission into evidence of H's statements to the police officers on the grounds that those statements were hearsay. Although the plaintiff offered to make the child available, the court indicated it was not going to allow a six year old child to testify.

The testimony and reports offered by the two police officers revealed that H was sexually molested, that H asserted that the defendant knew about the molestation, and that Post confessed to molesting H. The reports also disclosed conflicting assertions by the defendant that the molestation never took place and that she had no knowledge of it.

When Rucci was called as a witness, she objected to testifying, claiming that her conversations with H were confidential and were, therefore, privileged communications protected under this state's confidentiality statute. The trial court allowed the plaintiff to waive H's privilege over objections of the defendant and the witness, both of whom maintained that a parent or guardian who has an interest in the outcome of the hearing could not waive the privilege on behalf of the child. Upon order of the trial court, Rucci testified and her notes were admitted into evidence.

Rucci's notes and testimony corroborated the fact that there was a conflict between H's statements and those of the defendant relative to the molestations and the defendant's knowledge of the abuse.

By the end of the first day of hearings the trial court was aware of the following facts: (1) H's custody was modified by an ex parte order and a hearing was never held on that order; (2) Post confessed to molesting H; and (3) there was a conflict between H's testimony and that of the defendant relating to whether the molestations ever took place and whether the defendant knew about them. The trial court also knew that DCYS was involved, that there was a great deal of conflict between the plaintiff and the defendant over custody, as well as discord between the plaintiff's parents and the defendant's parents. Over the course of the four subsequent days of trial, the trial court heard testimony from the plaintiff, the defendant, their respective par-

ents, a DCYS social worker, and the defendant's sister. All of this testimony pointed out the heated conflict between the two families and the disparate versions of Post's sexual molestations of H.

The trial court in its memorandum of decision found that there was no conclusive probative evidence that the defendant knew or should have known that H had been molested. The court stated further that the defendant was living with her parents and that they were a good influence on the defendant and her children. On the basis of these findings, the court awarded custody of both children to the defendant.

The guiding principle applicable to determining the custody of children in a dissolution proceeding is the best interests of the child. General Statutes § 46b-56 (b);[3] *Spicer* v. *Spicer*, 173 Conn. 161, 162, 377 A.2d 259 (1977); *Simons* v. *Simons,* 172 Conn. 341, 347, 374 A.2d 1040 (1977). Our Supreme Court has stated that "[i]n the search for an appropriate custodial placement, the primary focus of the court is the best interests of the child, the child's interest in sustained growth, development, well-being, and in the continuity and stability of its environment." *Cappetta* v. *Cappetta,* 196 Conn. 10, 16, 490 A.2d 996 (1985). This standard articulates the right of children in custody cases to be placed in an environment where they are not abused and neglected but rather where they are loved and nurtured.

In determining what is in the best interests of the child, the court is vested with broad discretion. *Ridge-*

---

[3] General Statutes § 46b-56 provides inter alia "(b) In making or modifying any order with respect to custody or visitation, the court shall be guided by the best interests of the child, giving consideration to the wishes of the child if he is of sufficient age and capable of forming an intelligent preference, provided in making the initial order the court may take into consideration the causes for dissolution of the marriage or legal separation if such causes are relevant in a determination of the best interests of the child."

*way* v. *Ridgeway,* 180 Conn. 533, 541, 429 A.2d 801 (1980); *Kearney* v. *State,* 174 Conn. 244, 252, 386 A.2d 223 (1978); *Simons* v. *Simons,* supra, 348; *Palmieri* v. *Palmieri,* 171 Conn. 289, 290, 370 A.2d 926 (1976). This court is not privileged to usurp that authority or to substitute its judgment for that of the trial court. " 'A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference.' " *Kearney* v. *State,* supra, quoting *Morrill* v. *Morrill,* 83 Conn. 479, 491, 77 A. 1 (1910).

General Statutes § 46b-54 (b) provides that the court may appoint counsel in any case "when the court finds that the custody, care, education, visitation or support of a minor child is in actual controversy . . . ."[4] Although the language of the statute leaves such appointments to the discretion of the court, our Supreme Court has stated that "in the absence of strong countervailing considerations such as physical urgency or financial stringency, the better course is to appoint independent counsel *whenever the issue of child*

---

[4] General Statutes § 46b-54 provides: "(a) The court may appoint counsel for any minor child or children of either or both parties at any time after the return day of a complaint under section 46b-45, if the court deems it to be in the best interests of the child or children. The court may appoint counsel on its own motion, or at the request of either of the parties or of the legal guardian of any child or at the request of any child who is of sufficient age and capable of making an intelligent request.

"(b) Counsel for the child or children may also be appointed on the motion of the court or on the request of any person enumerated in subsection (a) of this section in any case before the court when the court finds that the custody, care, education, visitation or support of a minor child is in actual controversy, provided the court may make any order regarding a matter in controversy prior to the appointment of counsel where it finds immediate action necessary in the best interests of any child.

"(c) Counsel for the child or children shall be heard on all matters pertaining to the interests of any child, including the custody, care, support, education and visitation of the child, so long as the court deems such representation to be in the best interests of the child."

*custody is seriously contested."* (Emphasis added.) *Yontef* v. *Yontef,* 185 Conn. 275, 284, 440 A.2d 899 (1981); see also K. Landsman & M. Minow, "Lawyering for the Child: Principles of Representation in Custody and Visitation Disputes Arising from Divorce," 87 Yale L.J. 1126, 1129–34 (1978); R. Berdon, "Child Custody Litigation: Some Relevant Considerations," 53 Conn. B.J. 279, 286–88 (1979).

In *Yontef,* supra, the trial court was not faced with charges of child abuse or sexual abuse. The court had the benefit of a family relations study and had ample evidence to support a finding that both parties were proper, fit and good parents. In this case, where custody is hotly contested, where, prior to trial, the court is made aware of allegations of child abuse and sexual molestation, and where those allegations become abundantly clear during the first day of testimony, it is an abuse of discretion not to appoint counsel for the minor children. *C.J.(S.)R.* v. *G.D.S.,* 701 S.W.2d 165, 169 (Mo. App. 1985); *M.M.* v. *R.R.M.,* 358 N.W.2d 86 (Minn. App. 1984). When custody is contested and there are allegations of neglect and abuse, children have a unique need to be represented by counsel who will advocate their best interests.

If counsel had been appointed for H at the time of the ex parte order that counsel most likely would have requested a family relations study in accordance with § 46b-6 of General Statutes[5] and may have requested

[5] General Statutes § 46b-6 provides: "In any pending family relations matter the court or any judge may cause an investigation to be made with respect to any circumstance of the matter which may be helpful or material or relevant to a proper disposition of the case. Such investigation may include an examination of the parentage and surroundings of any child, his age, habits and history, inquiry into the home conditions, habits and character of his parents or guardians and evaluation of his mental or physical condition. In any action for dissolution of marriage, legal separation or annulment of marriage such investigation may include an examination

a hearing on the ex parte order to get the court involved in the allegations set forth in the affidavit at the earliest possible date. On the first day of trial, counsel for H could have pointed out that under § 54-86h[6] H was competent to testify. *State* v. *James*, 211 Conn. 555, 563–65, 560 A.2d 426 (1989); *Wilhelm* v. *Czuczka*, 19 Conn. App. 36, 38, 561 A.2d 146 (1989). Counsel could have argued that because her testimony was pivotal to the determination of her custody and sexual abuse, H was entitled to testify as of right. Counsel for H also could have cited § 52-146k (d)[7] to highlight the fact that

into the age, habits and history of the parties, the causes of marital discord and the financial ability of the parties to furnish support to either spouse or any dependent child.''

[6] General Statutes § 54-86h provides: ''No witness shall be automatically adjudged incompetent to testify because of age and any child who is a victim of assault, sexual assault or abuse shall be competent to testify without prior qualification. The weight to be given the evidence and the credibility of the witness shall be for the determination of the trier of fact.''

[7] General Statutes § 52-146k provides in relevant part: ''(a) As used in this section: . . . (3) 'Confidential communication' means information transmitted between a victim of a battering or a sexual assault and a battered women's counselor or sexual assault counselor in the course of that relationship and in confidence by a means which, so far as the victim is aware, does not disclose the information to a third person other than any person who is present to further the interests of the victim in the consultation or any person to whom disclosure is reasonably necessary for the transmission of the information or for the accomplishment of the purposes for which such counselor is consulted, and includes all information received by, and any advice, report or working paper given or made by, such counselor in the course of the relationship with the victim. . . .

''(5) 'Sexual assault counselor' means any person engaged in a rape crisis center who (A) has undergone a minimum of twenty hours of training which shall include, but not be limited to, the dynamics of sexual assault and incest, crisis intervention, communication skills, working with diverse populations, an overview of the state criminal justice system, information about hospital and medical systems and information about state and community resources for sexual assault victims, (B) is certified as a counselor by the sexual assault center which has provided such training, (C) is under the control of a direct services supervisor of a rape crisis center, and (D) whose primary purpose is the rendering of advice, counseling and assistance to, and the advocacy of the cause of, victims of sexual assault.

''(6) 'Victim' means any person who consults a battered women's counselor or a sexual assault counselor for the purpose of securing advice, coun-

the plaintiff had an interest in the outcome of the dispute and therefore could not waive H's privilege of confidentiality with her sexual abuse counselor.

Both the plaintiff and the defendant had the benefit of counsel whose advocacy obligations were to their clients. Those obligations do not require that the parents' counsel act in the best interest of the children. Neither parent could be relied on to communicate to the court the children's interests where those interests differed from his or her own. As the United States Supreme Court has recognized, "experience has shown that the question of custody, so vital to a child's happiness and well being, frequently cannot be left to the discretion of parents. This is particularly true where, as here, the estrangement of husband and wife beclouds parental judgment with emotion and prejudice." *Ford* v. *Ford,* 371 U.S. 187, 193, 83 S. Ct. 273, 9 L. Ed. 2d 240 (1962).

Finally, the court is not an advocate but rather is the arbiter of the dispute and of the best interests of the child. It is clear that both H and N needed and were entitled to counsel to advocate their best interests.

The judgment is reversed as to the award of custody and child support and the case is remanded for a new

seling or assistance concerning a mental, physical or emotional condition caused by a battering or a sexual assault.

· "(b) On or after October 1, 1983, a battered women's counselor or a sexual assault counselor shall not disclose any confidential communications made to such counselor at any time by a victim in any civil or criminal case or proceeding or in any legislative or administrative proceeding unless the victim making the confidential communications waives the privilege . . . .

"(d) A minor may knowingly waive the privilege established by this section. In any instance where the minor is, in the opinion of the court, incapable of knowingly waiving the privilege, the parent or guardian of the minor may waive the privilege on behalf of the minor, provided such parent or guardian is not the defendant and does not have a relationship with the defendant such that he has an interest in the outcome of the proceeding."

hearing on those issues; custody of the children and the award of child support shall remain as ordered until further order of the Superior Court.

In this opinion the other judges concurred.