[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE ORDER OF CUSTODY
The above couple were married on July 11, 1987. During the course of the marriage, they had one child issue of the marriage, born September 20, 1988. Dissolution proceedings were commenced April 10, 1989. A decree of dissolution based upon irretrievable breakdown was entered on July 20, 1990. An order of joint custody, primary residence with the plaintiff and visitation to the defendant of 48 hours per week was entered, subject to a full hearing. This issue was referred to the undersigned on August 15, 1990. Trial continued until completion on August 29, 1990.
The couple met while both were working as security guards at the Millstone power plant. The defendant took maternity leave for the birth of the baby and returned to work six weeks thereafter. At that time she volunteered for the night shift, which required her to be on the premises from 6:45 p.m. to 7:00 a.m. Shortly after returning to work she commenced working out at a local gym. Between her work, travel and workout time, some 17 hours per day were consumed, leaving 7 hours per day for eating, sleeping and child care. At about the same time tensions developed between the couple. The defendant complained the plaintiff was not supportive. The plaintiff complained the defendant was not at home enough. Coincidentally, at the same time, the defendant met her current paramour, Stewart Richard.
In February, 1989, the defendant proposed that the plaintiff and defendant and child take a vacation to visit the defendant's sister in Hawaii and purchased airline tickets. A dispute developed and the defendant went to Hawaii with Mr. Richard, instead of her husband, where they stayed together with her sister. They returned in April, 1989, at which time the plaintiff and defendant separated, and the defendant moved into her mother's house. She continued to see Mr. Richard, and by November 1, 1989, was pregnant with his child.
The plaintiff, from the birth of the child, has been the primary care giver, with a large amount of support from CT Page 55 his parents. He had left Millstone and was working a variable security shift at Pfizer. When he would leave for work, he would take the child to his mother's home.
After the separation, the court (Leuba, J.) entered an order of joint custody, with the primary caretaker being the father and reasonable rights of visitation to the mother, to include overnights and on her days off.
In determining the award of custody of a minor child, "The primary focus of the court is the best interests of the child, the child's interest in sustained growth, development, well-being and in the continuity and stability of its environment." Cappetta v. Cappetta, 196 Conn. 10, 16. Further, "(T)he test is not which parent was the better custodian in the past, but which is the better custodian now." Yontef v. Yontef, 185 Conn. 275, 283. Further, our Supreme Court has consistently rejected any presumption that a parent's lifestyle necessarily has an adverse effect on a child. Gallo v. Gallo, 184 Conn. 36, 42. However, the court must also consider the parents' past behavior as it related to their parenting ability and to their consistency in parenting and lifestyle, insofar as these factors might affect the child's growth, development and well-being. Seymour v. Seymour, 180 Conn. 705, 711.
The court heard testimony from the parties, the plaintiff's mother, several friends of the plaintiff, several therapists and Mr. Richard. It also had the benefit of a full report on custody from a Family Relations Officer, Mark Patterson.
Before addressing the award of custody, the Court must consider whether joint custody may be awarded. See section 46b-56a, Connecticut General Statutes. Absent agreement by the parties, as to joint custody, or a motion by one of the parties, the court may not award joint custody. Emerick v. Emerick, 5 Conn. App. 649, 659. Neither such an agreement, nor such a motion, appears of record, nor is the Court cited to any such. The defendant, in her brief, requests sole custody, although plaintiff asks for joint custody. The issue, then, is sole custody of the child.
The Court will address the claims of the defendant first. Her claim is buttressed by a recommendation by the Family Relations report which was filed on June 14, 1990, although no attorney had been appointed for the child prior to the dissolution. See G.S. v. T.S., 23 Conn. App. 509, 516,517. Such report recommended that custody be awarded to the defendant. However, the Court is not bound by such CT Page 56 recommendation. Yontef v. Yontef, supra, 281.
The Court is disturbed by the recommendation. In the first place, the defendant has never in the life of the child assumed primary responsibility for the child. She returned to work six weeks after the birth of the child. Her work and exercise schedule left her with a total of seven hours per day at home, including time for sleep, except for weekends. This is insufficient time to tend to the needs of a new baby, especially if an emergency arises. Two such incidents occurred, and the child's extended family had to take over. Within six months of the birth, she was off to Hawaii with Mr. Richard, leaving her child behind. Within eight months of the birth, separation had occurred, and she saw the child only on visitation. In little more than a year from the birth of the child, she was enceinte with Mr. Richard's child; and the new demands on her time would interfere with her assuring the primary custody responsibility.
The Court is also concerned with the appearance that the defendant puts her interests ahead of the child's. As noted supra, she volunteered for a job period that required her to be out of the house for an extended period. When she could have had time with the child, she established a schedule of working out at a gym. She left for Hawaii, assuming the baby would be taken care of by the plaintiff and his extended family. After the breakup she allowed her paramour to interfere with custody and visitation matters, thereby exacerbating an already unpleasant situation.
Finally, the Court has problems with the credibility of the defendant. Some of those concerns arose in the cross-examination of the Family Relations officer. One of the resources furnished to the officer by the defendant told him that the defendant and Mr. Richard were just good friends at a time when the defendant was six months pregnant with his child. It is not unreasonable to impute such misleading information to the defendant. In October, 1989, the defendant told the officer she was not romantically involved with Mr. Richard. Yet, within a few weeks, she was pregnant with his child. Further, she had met him in January, 1989, during her employment in a job that, by her account, entailed long, lonely hours. He had thereafter accompanied her to Hawaii, had helped her move and had provided comfort up to and after the aforesaid time. "It is an abiding principle of jurisprudence that common sense does not take flight when one enters a courtroom." State v. Zayas, 195 Conn. 611, 620 (Parskey, J.). The concern of the Court in this area is important when applied to the representation of the defendant as to her network of helpers in caring for the child when she was at CT Page 57 work. The Court had been given to believe that she and Mr. Richard were living with her mother who would be available for child care. In actuality, her mother had left the house the defendant and Mr. Richard were living in. The Court is therefore concerned about the stability of the proposed environment.
In short, the Court has many reservations in granting custody to the defendant, although there was ample evidence that she was a caring parent.
Conversely, the Court has few reservations in granting custody to the plaintiff. He has been the primary caretaker since birth. The child has always had the benefit of the plaintiff's extended family. The Court has confidence this support will continue. The child will have the benefit of "the continuity and stability of its environment." Cappetta, supra, p. 16; one of the important factors the Court must consider.
An order may enter granting custody of the child to the plaintiff, with visitation to the defendant as previously ordered by Judge Leuba. Likewise, the present order of support is confirmed, subject to adjustment in accordance with current financial affidavits in accordance with the statutory guidelines.
BURNS, J.