THOMAS LAMBERT, JR. *v.* KATHLEEN DONAHUE
(AC 22996)

Foti, Schaller and Flynn, Js.

494

Submitted on briefs May 2—officially released August 5, 2003

*Joseph Chiarelli* filed a brief for the appellant (plaintiff).

*Lisa A. Faccadio* and *Christine S. Dorsey* filed a brief for the appellee (defendant).

*Opinion*

FLYNN, J. The plaintiff, Thomas Lambert, Jr., once again appeals from postjudgment orders made relating to the custody, support and visitation of the parties' minor child, which have been the subject of almost constant litigation since the child's birth.[1] The defendant,

---

[1] As the court explained: "There have been numerous motions filed starting with the plaintiff in July, 1992, one month after the defendant moved out [of the home that she shared with the plaintiff and their child]. The parties have been engaged in litigation every year since then. They have had numerous contacts with the family services office resulting in several agreements and modifications of those agreements. On July 6, 1998, the court ordered a full custody evaluation.

"To date, the only thing the parties have agreed on is that they do not communicate. They have been unable or unwilling to agree on anything concerning the child's welfare." *Lambert* v. *Donahue*, Superior Court, judicial district of New Haven, Docket No. 333223 (October 15, 1999) (*Crawford, J.*).

Each party calls the child by a different name, and "they have used the child as a messenger between them." Id. "The parents have argued about doctor's visits, the child's first communion, the child's class pictures, his enrollment in the Boy Scouts and even his Halloween costume. . . . The child has reported that on one occasion, he overheard the father refer to the mother as a 'jackass.' The child also reported that the mother does not say bad things about the father.

Kathleen Donahue, is the mother of the parties' child, who was born on January 1, 1991. Lambert is his father.

Lambert presents the following issues on appeal: "(1) Did the trial court err in concluding the evidence in the trial of this matter and then requesting a written response to judicial inquiries which written answers/position submission was not subject to cross examination? (2) Did the trial court err in entering orders modifying child custody/visitation and support without appointing an attorney or guardian ad litem to represent the minor child? (3) Did the trial court err in modifying the judgment by awarding sole legal and physical custody of the unrepresented minor child to the mother where: the mother did not file any motion to modify custody/visitation alleging a substantial change of circumstances to warrant such modification; the court did not make any finding regarding a change in circumstances to warrant a modification; and the court failed to consider the statutory criteria pursuant to [General Statutes §] 46b-56 concerning custody? (4) Did the trial court err in finding that the plaintiff 'admitted' that the child spends seventy five to eighty percent of his parenting time with the grandparents and not with him when same was not the plaintiff's testimony? (5) Did the trial court err in awarding $3,000 in counsel fees to the defendant when the court did not state the basis of such award and failed to consider the appropriate statutory criteria for such award? (6) Did the trial court err in not ruling on [motion number] 266—the plaintiff's Motion For Contempt Post-Judgment Vacation dated June 8, 1999 in that same was specifically to be decided by the court and extensive testimony was elicited and received regarding the subject matter of [motion number] 266?" We affirm the judgment of the court.

"The plaintiff seems to believe that he can demand and should have an accounting of every minute of the child's life when the child is with the mother. His idea of an agreement or a compromise is acquiescence to his demands." Id.

The following facts are relevant to our resolution of Lambert's claims. By orders entered on November 12, 1993, the child was placed in the joint custody of both Lambert and Donahue with actual physical custody granted to Donahue. The court also entered visitation and support orders at that time. The parties filed a series of postjudgment motions, and hearings were held over a number of weeks, concluding on July 16, 1999. At the close of those hearings, the court asked the parties to submit written responses to the court's remaining questions regarding the schedules of each parent, the activities of their child, and facts relating to vacation schedules and vacation plans. Donahue filed her written responses on August 27, 1999, and Lambert filed his responses on October 4, 1999. The court, thereafter, issued its decision on October 15, 1999, awarding sole custody of the child to Donahue. The court also modified the visitation schedule and the child support payments, and it found Lambert in contempt for taking the child out of the state without notifying Donahue of the child's whereabouts. Accordingly, the court ordered Lambert to pay $3000 in counsel fees on behalf of Donahue.

Lambert filed an appeal of that decision on December 2, 1999, but shortly thereafter, on February 29, 2000, he also filed a motion with the trial court requesting an evidentiary hearing regarding the parties' responses to the court's questions. Because the court granted the motion, and the evidentiary hearing had not been held prior to oral argument on the appeal, we dismissed the original appeal for lack of a final judgment. See *Lambert* v. *Donahue*, 69 Conn. App. 146, 794 A.2d 547 (2002). Nevertheless, after allowing Lambert additional time to file a supplemental brief, we did consider the first amended appeal that Lambert filed, which related to the court's order that Lambert pay $4000 toward Donahue's

expenses in defending the appeal. See id., 149; see also Practice Book § 61-9.[2] We upheld that order.

In relation to Lambert's request for an evidentiary hearing as to the parties' responses to the court's inquiries, on March 15, 2002, the court, after reconsideration, denied the motion for the evidentiary hearing. This appeal followed.

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Berglass* v. *Berglass*, 71 Conn. App. 771, 775, 804 A.2d 889 (2002).

I

Lambert's first claim is that the court improperly concluded the evidentiary phase of the proceeding, but then requested written responses to its inquiries without giving the parties the opportunity to cross-examine

---

[2] Practice Book § 61-9 provides in relevant part that "the court may order that an amended appeal be briefed or heard separately from the original appeal. . . ."

each other as to those responses. Lambert argues that these court-ordered submissions were "clearly hearsay, not subject to cross-examination, improperly considered by the trial court as evidence, and required by the court [in] abuse of the trial court's discretion in this matter." After reviewing the record, we decline to review the merits of this claim because we conclude that Lambert, through his attorney, agreed to the submission of posthearing written responses.

"Whether or not the trial judge shall question a witness is within [the court's] sound discretion. The extent of the examination is likewise within [the court's] sound discretion. Its exercise will not be reviewed unless [the court] has acted unreasonably, or, as it is more often expressed, abused [its] discretion. The judge must not exhibit bias or prejudice nor take sides." (Internal quotation marks omitted.) *LaBow* v. *LaBow*, 13 Conn. App. 330, 335, 537 A.2d 157, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988). "[T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and . . . evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the [appellant] of a substantial prejudice or injustice." (Internal quotation marks omitted.) *Sheiman* v. *Sheiman*, 72 Conn. App. 193, 201, 804 A.2d 983 (2002).

The following additional facts are relevant to our resolution of this issue. On July 16, 1999, after Lambert's attorney curtailed his examination of Donahue and told the court that his case was concluded, the court stated that it still had many questions for the parties. The judge then asked the parties if they wanted to submit the responses "posttrial . . . ." The court explained that it would leave the evidence open because "additional information would be helpful to the court . . . and [counsel] can submit [the responses] in writing because

. . . it avoids another court date." Counsel for both Lambert and Donahue responded in the affirmative, with Lambert's counsel responding, "Yes," and Donahue's counsel responding, "Fine." The court asked the parties to provide information as to the following: "the regularly scheduled vacations . . . of the child; the regularly scheduled activities that are done with the child . . . if there are things that happen approximately the same time during the year; the parents' work schedule and if there is a set vacation . . . ." The court also asked for information regarding medical insurance.

Donahue's attorney asked the court how it would like these submissions presented, and the court responded that it wanted them on pleading paper. After the court reviewed a temporary summer visitation agreement worked out by the parties, it then asked the parties if they had any questions. Lambert asked one question relating to telephone calls, which the court answered, and neither party responded affirmatively when asked, again, whether there was "anything further." Accordingly, the court adjourned the hearing.

On August 27, 1999, Donahue filed her responses with the court, and, on October 4, 1999, Lambert filed his responses. Neither party requested the opportunity to question the other party regarding the submitted responses. The court filed its memorandum of decision on October 15, 1999. Lambert filed an appeal from the judgment on December 2, 1999, but he then filed a motion for an evidentiary hearing on February 29, 2000, which the court, initially, granted. His appeal, therefore, was not from a final judgment, and we dismissed it. At a hearing held on March 15, 2002, the court reconsidered its granting of the motion for an evidentiary hearing and stated that the motion had been "improvidently granted." The court went on to explain that "neither submission played any role in the decision that [the court] had entered" because the extensive typewritten

responses were not what the court had in mind. The court further explained that responses from both the plaintiff and the defendant were "totally disregarded" by the court and that when it "actually prepared the decision and entered the orders, [it] did not factor in the information from either party."

Although the plaintiff, on appeal, vehemently argues that the court abused its discretion by admitting and considering this requested hearsay evidence, he responded affirmatively when the court requested the submissions "post" and in writing in order to avoid another court date, he did not raise an objection of any sort before the court, and he did not file a request for an evidentiary hearing until more than seven months after the court requested the submissions.[3] This request for an evidentiary hearing did not come until more than four months after the court issued its memorandum of decision.

"Whenever evidence is admitted without objection, the trier of fact can rely on its contents for whatever they are worth on their face. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act. . . . Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Citations omitted; internal quotation

---

[3] "Hearsay is an out-of-court statement offered into evidence to establish the truth of the matters contained therein. . . . As a general rule, hearsay evidence is not admissible unless it falls under one of several well established exceptions. . . . If such evidence is offered to establish the truth of statements contained therein, the burden is on the proponent of the evidence, *upon timely objection*, to establish that the evidence is admissible." (Citations omitted; emphasis added; internal quotation marks omitted.) *New England Savings Bank* v. *Bedford Realty Corp.*, 238 Conn. 745, 753, 680 A.2d 301 (1996), rev'd after remand, 246 Conn. 594, 717 A.2d 713 (1998).

marks omitted.) *State* v. *Parham*, 70 Conn. App. 223, 230, 797 A.2d 599 (2002).

In *Fraund* v. *Design Ideas, Inc.*, 17 Conn. App. 280, 285, 551 A.2d 1279 (1989), both the plaintiff and the defendant submitted posthearing evidence, contained in their briefs, to an arbitrator. On appeal of the arbitrator's decision, "[t]he court concluded that, because . . . the [appellant] failed to object to the submission of the evidence, [it] had waived its right to object." Id. In upholding this decision, we held that "the trial court did not err in finding that the [appellant] had waived any objection to the posthearing submission of evidence."[4] Id.

Because Lambert did not request an evidentiary hearing until more than four months after the court rendered judgment, and he failed to object to the court's request for written submissions and, according to the record, his counsel agreed to this procedure, we decline to review this claim further. Additionally, the appellant has not shown any harm from the procedure employed by the court especially since the court made it clear that the posthearing submissions played no part in the ratiocination process leading to its decision.

II

Lambert next claims that the court abused its discretion when it entered modifying orders related to the child without appointing an attorney or guardian ad litem on the child's behalf. We disagree.

General Statutes § 46b-54 provides in relevant part: "(a) The court may appoint counsel for any minor child

---

[4] Although we do not endorse the posthearing procedure that was used, nor do we approve of its use in future cases, the appellant has not shown, in this case, that he was aggrieved by the process to which he agreed and to which he interposed no objection, and which also played no role in the judge's decision.

. . . if the court deems it to be in the best interests of the child . . . . (b) Counsel for the child . . . may also be appointed . . . when the court finds that the custody, care, education, visitation or support of a minor child is in actual controversy . . . ."

"The purpose of appointing counsel for a minor child in a [custody matter] is to ensure independent representation of the child's interest and such representation must be entrusted to the professional judgment of appointed counsel within the usual constraints applicable to such representation. *Schaffer* v. *Schaffer*, 187 Conn. 224, 225 n.1, 445 A.2d 589 (1982). Whenever child custody is seriously contested, it is preferable to appoint independent counsel. *Yontef* v. *Yontef*, 185 Conn. 275, 284, 440 A.2d 899 (1981). Generally, appointment of counsel for minor children rests within the discretion of the court . . . [and] the failure of the court to appoint an attorney [generally is] not such a clear abuse of discretion that [a party] would be entitled to reversal on that ground. *Kearney* v. *State*, [174 Conn. 244, 251, 386 A.2d 223 (1978)]." (Citation omitted; internal quotation marks omitted.) *Pisch* v. *Pisch*, 7 Conn. App. 720, 725–26, 510 A.2d 455 (1986).

Lambert attempts to analogize the present case to that of *G.S.* v. *T.S.*, 23 Conn. App. 509, 582 A.2d 467 (1990), wherein this court held that it was an abuse of discretion not to appoint counsel for the minor children. Id., 510. In *G.S.*, the issue concerning the appointment of counsel for the minor children was raised in a pretrial motion. In that case, we explained that "[t]his motion was never addressed by either the court or the defendant . . . [and the] court's failure to appoint counsel went to the vital issue of custody in [the] case. . . . [W]here custody is contested and where allegations of child abuse, specifically allegations of sexual molestation, [are] known to the trial court prior to the commencement of trial and [where they become]

abundantly clear during the first day of testimony, it [is] an abuse of discretion not to appoint counsel for the minor children." Id.

Lambert argues that the present case is similar because the court expressed concern over one incident where Lambert pushed his child against a wall. The child had been hitting his grandmother, Lambert's mother, and, in an effort to stop the child from further striking her, Lambert pushed him. Although Lambert is correct in that the court found this incident "very troubling" and "inappropriate," this isolated use of "poor judgment" in physically handling his child, although disconcerting, is a far cry from the allegations of repeated sexual abuse that were alleged in *G.S.* v. *T.S.*, supra, 23 Conn. App. 509. In the present case, the court was faced with a troubling incident that did not involve any allegations of neglect, sexual abuse or physical abuse that required Lambert's arrest. Additionally, neither party requested that an attorney or a guardian be appointed for the minor child in this matter.

Pursuant to § 46b-54, the appointment of an attorney to represent a minor child rests within the sound discretion of the court. Lambert has presented nothing on appeal that convinces us that the court clearly abused its discretion by not appointing an attorney in this matter.

### III

Lambert next claims that the court improperly modified the previous judgment, awarding sole custody to Donahue, without making findings relating to changed circumstances, as required by § 46b-56, and that it did so without Donahue having filed a request for such modification. This claim is wholly without merit.

"The authority to render orders of custody and visitation [is] found in General Statutes § 46b-56, which pro-

vides in part: (a) In any controversy before the superior court as to the custody or care of minor children . . . the court may at any time make or modify any proper order regarding . . . custody and visitation. . . . (b) In making [or modifying] any order with respect to custody or visitation, the court shall (1) be guided by the best interests of the child. . . . Before a court may modify a custody order, it must find that there has been a material change in circumstance since the prior order of the court, but the ultimate test is the best interests of the child. . . . The sole question is whether the trial court abused its discretion in deciding that the best interests of the child would be served by [the modification]. The trial court [has] the advantage of observing the witnesses and the parties. Considerable evidence [normally is] presented concerning the activities of the parties since [the rendering of the original judgment]. In circumstances like these, whether the best interests of the [child] dictate a change of custody is left to the broad discretion of the trial court. . . . A mere difference of opinion or judgment cannot justify the intervention of this court. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference." (Internal quotation marks omitted.) *Sheiman* v. *Sheiman*, supra, 72 Conn. App. 199.

Although Lambert persists in arguing that Donahue did not file a request to modify custody, the record clearly establishes that, at the start of the hearing, while the court was assessing the scores of motions that had been filed in this case, counsel for Donahue explained that she had filed four motions, one of which was a motion "to adopt the family relations evaluation." Counsel explained that this motion was, in essence, a motion to modify custody by adopting the report of the family relations office, which recommended that Donahue be awarded sole legal and physical custody of the child.

Lambert was present at the hearing when this exchange occurred, and the record clearly reveals that he was aware that Donahue was seeking sole custody by means of the motion to adopt the family relations evaluation. Additionally, he did not object to the characterization of this motion as a motion to modify. Accordingly, we find absolutely no merit to his claim.

Lambert also claims that the court modified custody without making a finding of changed circumstances. Upon our review of the court's memorandum of decision, however, we find that the court specifically stated that its orders were made in consideration of "the evidence, § 46b-56 concerning custody, General Statutes § 46b-84 concerning support, General Statutes § 46b-62 concerning attorney's fees and General Statutes § 46b-87 concerning contempt . . . ." Furthermore, the memorandum of decision is replete with references to evidence that demonstrates a change in circumstances by the parties' complete inability to communicate concerning their child. The court specifically found that these parents argue about everything from physician's visits to class photographs to Halloween costumes, all to the detriment of their child. They refer to their child by different names, with Lambert using a common nickname for the child and Donahue referring to the child by his initials. Finding that a coparenting situation was not working for these parties, the court properly awarded sole custody to the parent that it found, on the basis of the evidence, best suited to assume that very important responsibility.

On the basis of our review of the record, we conclude that the court did not abuse its discretion when it concluded that it was in the best interest of the child that sole custody be awarded to Donahue.

IV

Lambert next claims that the court made a finding of fact that was not supported by the evidence. He

argues that the "court erroneously drew the conclusion that the child is with the paternal grandparents 75 percent to 80 percent of the time and not with the plaintiff." Although we agree that the evidence did not support this one particular finding, we conclude that the inaccuracy was harmless because it did not form the primary basis for the court's ruling as there was substantial additional evidence from which the court drew its conclusions. Furthermore, Lambert does not claim to have been prejudiced by this inaccurate finding.

"When the factual basis of the trial court's decision is challenged on appeal, the role of this court is to determine whether the facts set out in . . . the decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . On appeal, the function of this court is limited solely to the determination of whether the decision of the trial court is clearly erroneous. . . . This court cannot find facts or draw conclusions from primary facts found, but can only review such findings to determine whether they could have legally, logically and reasonably been found by the trier . . . . Where, however, some of the facts found are clearly erroneous and others are supported by the evidence, we must examine the clearly erroneous findings to see whether they were harmless, not only in isolation, but also taken as a whole. . . . If, when taken as a whole, they undermine appellate confidence in the court's fact finding process, a new hearing is required." (Citations omitted; internal quotation marks omitted.) *DiNapoli* v. *Doudera*, 28 Conn. App. 108, 111–12, 609 A.2d 1061 (1992).

The court found that "[t]he plaintiff admitted that the child spends 75 percent to 80 percent of his parenting time with the grandparents and not with him. His parents also accompany him for most of the pickup and return of the child." Our review of the record reveals

that the court's finding regarding the amount of time that Lambert spends with his child on visitation lacks a reasonable basis in the facts.

Lambert testified that his parents do, in fact, spend much time with the child, but his testimony regarding the 75 to 80 percent time allocation was made in reference to how often his parents go with him to pick up his son. Specifically, Lambert testified that his parents "come along maybe 75, 80 percent of the time" when he picks up his son for visitation. His parents then take the child for the evening while Lambert remains at home. Lambert would then spend Saturday with his son, and he and his parents would have breakfast together on Sunday morning with the child before Lambert and his parents returned the child to Donahue on Sunday evening.

Although this testimony does not support the court's finding that Lambert's parents, and not Lambert, spent 75 percent to 80 percent of the total visitation time with the child, on the basis of our review of the record, we are not persuaded that this finding formed the basis of the court's order or that it was harmful.

Although we agree that the finding was inaccurate, we conclude that all of the findings, taken as a whole rather than focusing on this one inaccuracy, provide more than ample support for the court's decision, including, but certainly not limited to, the findings concerning Lambert's inability or unwillingness to compromise, the parents' inability to agree on anything concerning the child's welfare, the high degree of animosity between them and the necessity of police intervention at the child's school to prevent Lambert from improperly taking the child without authorization.

Additionally, we conclude that this one inaccuracy, concerning the amount of time that Lambert's parents spend with the child during Lambert's visitation, does

not undermine our confidence in the court's fact-finding process; see id.; and we, accordingly, are not persuaded that it was harmful.

V

Lambert next claims that the court improperly awarded $3000 in counsel fees to Donahue without stating the basis for the award. Specifically, he argues that "[t]he court failed to consider the criteria set forth in General Statutes § 46b-82 in awarding counsel fees, [and] it is not apparent from the trial court's memorandum of decision whether the award of counsel fees flows from the court's finding of the plaintiff in contempt of its orders or as counsel fees pursuant to § 46b-62." We do not agree.

"General Statutes § 46b-62 . . . provides in relevant part that '[i]n any proceeding seeking relief under the provisions of this chapter . . . the court may order either spouse or, if such proceeding concerns the custody, care, education, visitation or support of a minor child, either parent to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and [the] criteria set forth in [General Statutes §] 46b-82. . . .' An award of counsel fees under that statutory provision calls for the exercise of judicial discretion. *Lambert* v. *Donahue*, [supra, 69 Conn. App. 150]. In exercising its discretion, 'the court must consider the statutory criteria set out in §§ 46b-62 and 46b-82 and the parties' respective financial abilities.' Id." *Berglass* v. *Berglass*, supra, 71 Conn. App. 789.

In the present case, the court specifically stated that its orders were based, in part, on § 46b-62. Further review, however, is precluded because the record does not reveal the court's reasoning, specifically, whether or to what extent it considered the criteria set forth in § 46b-82. Although Lambert did request an articulation of that decision on November 3, 1999, the court denied

his request, and Lambert failed to seek our review of that denial pursuant to Practice Book § 66-7.[5]

"[W]here a party is dissatisfied with the trial court's response to a motion for articulation, he may, and indeed under appropriate circumstances he must, seek immediate appeal . . . to this court via the motion for review." (Internal quotation marks omitted.) *Pospisil* v. *Pospisil*, 59 Conn. App. 446, 451–52, 757 A.2d 655, cert. denied, 254 Conn. 940, 761 A.2d 762 (2000). "Our rules provide a procedure for clarifying the record when rulings of the trial court are unclear. . . . In addition, our rules provide a procedure for reviewing the adequacy of the trial court's response to a motion for articulation. . . . When a party is dissatisfied with the trial court's response to a motion for articulation, he [or she] may, and indeed under appropriate circumstances he [or she] must, seek immediate appeal . . . to this court via a motion for review. . . .

"Even if we assume the validity of this claim, proper utilization of the motion for articulation [and the motion for review] serves to dispel any such ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal. . . . The burden of securing an adequate record for appellate review of an issue . . . rests with the . . . appellant. . . . Because it is the . . . appellant's responsibility to provide this court with an adequate record for review . . . we will not remand a case to correct a deficiency the . . . appellant should have remedied." (Citations omitted; internal quotation marks omitted.) *Wellington Systems, Inc.* v. *Redding*

[5] Practice Book § 66-7 provides in relevant part: "Any party aggrieved by the action of the trial judge as regards . . . articulation under Section 66-5 may, within ten days of the issuance of notice of the order sought to be reviewed, make a written motion for review to the court, to be filed with the appellate clerk, and the court may, upon such a motion, direct any action it deems proper. . . ."

*Group, Inc.*, 49 Conn. App. 152, 179–80, 714 A.2d 21, cert. denied, 247 Conn. 905, 720 A.2d 516 (1998). "Without an adequate record, we can only speculate as to the basis for the trial court's decision. Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court." (Internal quotation marks omitted.) Id., 180–81. We, therefore, decline to address the question of whether the court's award of attorney's fees resulted from an abuse of discretion.

## VI

Lambert's final claim is that the court improperly failed to rule on his motion for contempt, number 266 in the court file, which alleged that Donahue was in contempt of court for failing to allow visitation on June 3, 1999. Lambert argues that, although the court specifically stated that it would consider this motion, it failed to rule on it. Donahue argues that the court did, in effect, rule on the motion because it found that Lambert was not entitled to this visitation. We agree with Donahue.

Initially, we note that if Lambert's argument were correct, this court would be unable to review this claim. The plaintiff cites no authority, nor are we aware of any, that would allow us to decide Lambert's motion, nor are we aware of any authority that would require us to reverse the judgment on the basis of the court's failure to decide a pending motion. "Although we do not condone a trial court taking an inordinate amount of time to rule on any motion, an appeal is not the proper remedy [for the court's failure to rule]. Practice Book § [60-2 (1)][6] gives this court the power to order

[6] Practice Book § 60-2 provides in relevant part: "The supervision and control of the proceedings on appeal shall be in the court having appellate jurisdiction from the time the appeal is filed . . . . The court may, on its own motion . . . or upon motion of any party, (1) order a judge to take any action necessary to complete the trial court record for the proper presentation of the appeal . . . ."

the trial court to rule on an undecided motion." *Wynn v. Metropolitan Property & Casualty Ins. Co.*, 30 Conn. App. 803, 809, 623 A.2d 66 (1993), aff'd, 228 Conn. 436, 635 A.2d 814 (1994). If Lambert's claim were correct, his remedy, then, would have been by way of motion to this court under Practice Book § 60-2 (1) for an order to compel the trial court to decide his motion for contempt.

Nevertheless, we do not find Lambert's claim to be accurate. In its memorandum of decision, the court specifically found, in relation to the allegedly contemptuous event, that "[t]he plaintiff . . . informed the defendant that he wanted to take the child for a long weekend where the child would miss school on the Friday and the mother's birthday on the Sunday. The mother notified the plaintiff that she did not agree. Absent an agreement as required by the court orders, the plaintiff appeared at the school on the Thursday afternoon to take the child for the weekend. Officers from the West Hartford police department had to be summoned to intervene in the dispute." The court also found that Lambert's "idea of an agreement or a compromise is acquiescence to his demands."

After a careful review of the court's decision, we conclude that, although not specifically mentioned in the decision, the court did, in essence, rule on Lambert's motion for contempt, number 266, finding in favor of Donahue.

The judgment is affirmed.

In this opinion the other judges concurred.