CHRISTOPHER B. KENNEDY *v.* LEANNA L. KENNEDY
(AC 24017)

Dranginis, DiPentima and Hennessy, Js.

Argued January 16—officially released May 25, 2004

*Christopher B. Kennedy*, pro se, the appellant (plaintiff).

*Susan Boyan*, for the appellee (defendant).

*Opinion*

HENNESSY, J. The plaintiff, Christopher B. Kennedy, appeals from the judgment of the trial court modifying the custody of the parties' minor children and from the court's finding of contempt. On appeal, the plaintiff claims that the court improperly (1) denied his request for a continuance and (2) granted the motion filed by the defendant, Leanna L. Kennedy, to modify the award of custody. We affirm in part and reverse in part the judgment of the trial court.

The plaintiff and the defendant were married in Connecticut in 1988. Three minor children, a boy and two girls, were born to the parties during the years 1988, 1993 and 1996. The parties' marriage was dissolved on May 7, 2002. Pursuant to a separation agreement, the terms of which the court incorporated into the judgment of dissolution, the parties were to maintain joint legal and physical custody of their minor children as well as a shared parenting plan. In accordance with the shared parenting plan, the children were to spend approximately 50 percent of their time with each parent. On June 18, 2002, the defendant filed a motion for a modification of custody and for support. The defendant sought sole custody of the children because, inter alia, "the shared parenting plan is not in the best interests of the

children." The defendant filed a motion for contempt on December 17, 2002, alleging that the plaintiff wilfully had violated a court order directing him to provide the children with telephone access to her while in his care.

Following an evidentiary hearing, the court granted both of the defendant's motions. The defendant thereafter was awarded sole custody "subject to reasonable rights of visitation to the plaintiff father."[1] The plaintiff was found in contempt of court for "wilfully [disregarding] the May 7, 2002 court order regarding telephone access." Additional facts will be provided as necessary.

I

The plaintiff first claims that the court improperly denied his request for a continuance to retain an attorney.[2] The following facts and procedural history are necessary to the resolution of his claim. On June 10, 2002, the defendant mailed a copy of the motion for modification, dated June 11, 2002, to the plaintiff's then attorney, James L. Katz. On June 25, 2002, the parties agreed to have the issue of custody referred to a family relations officer. That agreement was entered as a court order. On December 2, 2002, the evaluation was completed by the family relations officer and filed with the court. On December 3, 2002, the plaintiff filed a pro se

---

[1] In its order, the court specifically delineated the terms of the plaintiff's visitation rights.

[2] In response to that request, the court stated: "[T]his case has been pending since—it was first filed in April of the year 2001. Reviewing the file, you've had multiple attorneys representing you over the period of time. So, you clearly understand what it means to have an attorney. You last filed an appearance in lieu of attorney [James L.] Katz on December 3, 2002. You have had ample time to get an attorney if you so desired. When the scheduled date for the hearing on this matter has occurred, there's no reason why (a) I'm going to inconvenience any of the parties who have prepared and are ready, willing and able to proceed, and (b) it does involve some serious issues and, as such, I'm not going to grant your request for you to have a continuance to obtain an attorney. You've had ample time to do so."

appearance in lieu of Katz. On December 17, 2002, the defendant filed a motion for contempt with the court and mailed a copy to the plaintiff's home address. The motion to modify was scheduled for the court's short calendar on January 6, 2003, and, at the short calendar, scheduled for a special hearing on February 4, 2003.

The plaintiff did not appear at short calendar on January 6, 2003, but was present at the special hearing on February 4, 2003, and represented to the court that he had received notice of the special hearing approximately one week before that date. On February 4, 2003, the defendant informed the court that the motion to modify custody had been reclaimed subsequent to the completion of the family relations evaluation, that the plaintiff had been sent copies of the reclaimed motion and that he had been told at the family relations meeting that the defendant intended to pursue the motion. The defendant also told the court that she had mailed copies of the short calendar motion to the plaintiff and had informed him that the motion would be pursued on January 6, 2003.

At the February 4, 2003 hearing, the plaintiff requested a continuance in part because he (1) "did not have notice of the motions" at issue and (2) sought time to retain an attorney to represent him. We must analyze separately whether it was improper for the court to deny his request for a continuance as to each of the motions heard on February 4, 2003. At the outset, we set forth our standard of review of a court's decision to deny a request for a continuance. "A motion for continuance is addressed to the discretion of the trial court, and its ruling will not be overturned absent a showing of a clear abuse of that discretion. . . . The burden of proof is upon the party claiming an abuse of discretion. . . . We are especially hesitant to find an abuse of discretion when the motion is made on the day of trial. . . . Every reasonable presumption in favor of

the proper exercise of the trial court's discretion will be made." (Citations omitted.) *Tufano* v. *Tufano*, 18 Conn. App. 119, 123, 556 A.2d 1036 (1989).

A

On the basis of the foregoing standard, we conclude that in regard to the motion to modify custody, it was not an abuse of the court's discretion to deny the plaintiff's motion for a continuance.[3] The plaintiff was represented by counsel when the motion to modify custody was filed on June 18, 2001. On December 3, 2002, just two months prior to the hearing in question, the plaintiff filed a pro se appearance in lieu of that attorney. Then, on the date of the hearing, the plaintiff requested time to obtain representation. The court stated that the matter had been pending for a considerable amount of time and that the defendant was prepared and ready to proceed. We therefore cannot conclude that it was an abuse of the court's discretion to deny the plaintiff's request for a continuance on the motion to modify custody postjudgment.

B

The denial of the plaintiff's request for a continuance to retain an attorney for assistance on the motion of civil contempt raises different concerns.

---

[3] Although phrased as a claim of a lack of notice, the plaintiff's actual argument, before the court and on appeal, was that he needed the continuance for more time to prepare his case. The record reveals that the plaintiff argued at trial that he was aware of the motion to modify custody, but that he did not know what specific claims were made in the motion. In other words, he knew that the motion was filed, but did not know the substance of the motion and needed more time to become prepared for the hearing. We find that claim to be disingenuous because (1) service of the motion on his attorney would impute knowledge of the motion to him and (2) once he filed his appearance in lieu of Katz, he had complete access to the court file and could therefore have read the motion himself. Moreover, to the extent that he claims that he was not served properly with notice of the proceedings, the court found that he had been sent notice on January 17, 2002, and he conceded that he had received the notice. That claim, therefore, also fails to show that it was an abuse of the court's discretion to deny his request for a continuance.

Practice Book § 25-63 provides a right to counsel in family civil contempt proceedings.[4] We have held that a court's failure to advise a party of the right to counsel in a contempt proceeding in which he faces potential incarceration, and in the event he is indigent, to court-appointed counsel, is fatal to the finding of contempt and any order related thereto. See *Emerick* v. *Emerick*, 28 Conn. App. 794, 800, 613 A.2d 1351, cert. denied, 224 Conn. 915, 617 A.2d 171 (1992). Moreover, a waiver of a right to counsel "should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear on the record." (Internal quotation marks omitted.) Id., 799.[5] The following additional facts are relevant.

[4] Practice Book § 25-63 provides: "(a) A person who is before the court in a civil contempt proceeding involving the failure to comply with the order of a judicial authority in a family matter and who faces potential incarceration shall be advised of his or her right to be represented by counsel and his or her right to court appointed counsel if he or she is indigent. If the person is unable to obtain counsel by reason of his or her indigency he or she shall have counsel appointed to represent him or her unless:

"(1) He or she waives such appointment pursuant to Section 25-64; or

"(2) At the time of the application for the appointment of counsel, the judicial authority eliminates incarceration as a possible result of the proceeding and makes a statement to that effect on the record.

"(b) The person shall be further advised that no person shall continue to be detained in a correctional facility pursuant to an order of civil contempt for longer than thirty days, unless at the expiration of such thirty days he or she is presented to the judicial authority. On each such presentment, the contemnor shall be given an opportunity to purge himself or herself of the contempt by compliance with the order of the judicial authority. If the contemnor does not so act, the judicial authority may direct that the contemnor remain in custody under the terms of the order of the judicial authority then in effect, or may modify the order if the interests of justice so dictate.

"(c) Any attorney appointed to represent the contemnor shall represent such contemnor only on the contempt, and shall not be appointed for any other purpose."

[5] Practice Book § 25-64 provides: "A person shall be permitted to waive his or her right to counsel and shall be permitted to represent himself or herself at any stage of the proceedings, either prior to or following the appointment of counsel. A waiver will be accepted only after the judicial authority makes a thorough inquiry and is satisfied that the person:

"(1) Has been clearly advised of his or her right to the assistance of counsel, including his or her right to the assignment of counsel when he or she is so entitled;

The plaintiff requested counsel numerous times at the outset of the hearing and renewed his request during the proceeding as well. We note that although the court found that notice of the hearing was proper, the plaintiff seemed unaware that the contempt motion was being heard on February 4, 2003.[6] Moreover, the court did not advise him of his right to counsel in a civil contempt proceeding at any point in the hearing. In addition, the court did not and could not have found a waiver of that right on the record.[7] Moreover, the court did not remove the threat of incarceration until it made the decision to find the plaintiff in contempt. We conclude, therefore, that the court abused its discretion by denying the plaintiff's request for a continuance to obtain counsel on the matter of contempt.

"(2) Possesses the intelligence and capacity to appreciate the consequences of the decision to represent himself or herself;

"(3) Comprehends the nature of the proceedings, the range of permissible sanctions and any additional facts essential to a broad understanding of the case; and

"(4) Has been made aware of the risks and disadvantages of self-representation."

[6] The following colloquy occurred:

"[The Plaintiff]: Oh, the contempt is included in this?

"The Court: Yes. '

"[The Plaintiff]: Oh, I'm sorry, Your Honor. I thought we were focused—

"The Court: That's what we said.

"[The Plaintiff]: Oh, I didn't realize that we were pursuing the contempt. I thought it was just the sole custody and support—

\* \* \*

"The Court: Well, you should have been aware because we went over it in great detail beforehand.

"[The Plaintiff]: I thought it was only—

"The Court: And you cross-examined on it on numerous occasions, in talking about the issue of the telephone access.

"[The Plaintiff]: The telephone access, only as it pertains to the sole custody. I didn't realize it was an issue in itself, but I will continue.

"The Court: Well, that was the motion of the contempt that you said you never got, that I had the clerk photostat a copy of and give it to you."

[7] Although the court found that the plaintiff understood what it meant to have an attorney, that determination was based on the court's observation that the plaintiff had been represented by counsel in the past and not on the basis of an inquiry as required by our rules of practice. See footnote 2.

## II

The plaintiff's final claim is that the court improperly granted the defendant's motion to modify custody, which he alleged was not supported by sufficient evidence to conclude that a substantial change in circumstances had occurred. We disagree.

The authority to render orders of custody and visitation is found in General Statutes § 46b-56, which provides in part: "(a) In any controversy before the Superior Court as to the custody or care of minor children . . . the court may at any time make or modify any proper order regarding . . . custody and visitation . . . . (b) In making or modifying any order with respect to custody or visitation, the court shall (1) be guided by the best interests of the child . . . ." "Before a court may modify a custody order, it must find that there has been a material change in circumstance since the prior order of the court, but the ultimate test is the best interests of the child. . . . The sole question is whether the trial court abused its discretion in deciding that the best interests of the child would be served by [the modification]. The trial court [has] the advantage of observing the witnesses and the parties. Considerable evidence [normally is] presented concerning the activities of the parties since [the rendering of the original judgment]. In circumstances like these, whether the best interests of the [child] dictate a change of custody is left to the broad discretion of the trial court. . . . A mere difference of opinion or judgment cannot justify the intervention of this court. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference." (Internal quotation marks omitted.) *Lambert* v. *Donahue*, 78 Conn. App. 493, 505, 827 A.2d 729 (2003).

After reviewing the court's oral decision, we conclude that the court stated that its orders were made in accor-

dance with the aforementioned statutory criteria. The court specifically stated in relevant part that "there is no way the shared joint custody is working in the slightest, and the children are suffering as a result of that. The parties . . . are clearly unable to agree on matters that are affecting the children's health, their education, their extracurricular activities, their visitation, their holidays." The court further stated that "the joint custody system . . . [has] fallen apart" and attributed "the bulk of the reason why to [the plaintiff for] being inflexible, in putting [the] children in the middle and making [the] children pawns in this custody battle." The court found that the parties' relationship with one another was "hostile . . . deceitful . . . manipulative, and it is leading to a situation that is not fostering a healthy environment" for the children.[8] We conclude, therefore, on the basis of our review of the record, that the court did not abuse its discretion when it concluded that it was in the best interest of the children that sole custody be awarded to the defendant.

The judgment is reversed only as to the finding of contempt and the case is remanded with direction to vacate the contempt finding. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

[8] We note that a matter of concern to this court is the absence of independent counsel acting on behalf of the minor children in what was clearly an embattled custody dispute. "The purpose of appointing counsel for a minor child in a [custody matter] is to ensure independent representation of the child's interest and such representation must be entrusted to the professional judgment of appointed counsel within the usual constraints applicable to such representation. . . . Whenever child custody is seriously contested, it is preferable to appoint independent counsel. . . . Generally, appointment of counsel for minor children rests within the discretion of the court . . . [and] the failure of the court to appoint an attorney [generally is] not such a clear abuse of discretion that [a party] would be entitled to reversal on that ground. *Kearney* v. *State*, [174 Conn. 244, 251, 386 A.2d 223 (1978)]." (Citations omitted; internal quotation marks omitted.) *Lambert* v. *Donahue*, supra, 78 Conn. App. 503. Neither party, however, presented anything on appeal from which we could conclude that the court clearly abused its discretion by not appointing an attorney for the children in this matter.