STATE OF CONNECTICUT *v.* GENO BRYANT
(AC 19568)

Foti, Spear and Mihalakos, Js.

Argued September 28, 2000—officially released February 6, 2001

*Norman A. Pattis,* for the appellant (defendant).

*Harry Weller,* senior assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *David J. Strollo,* senior assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Geno Bryant, appeals from the judgments of conviction, rendered after a jury trial, of murder as an accessory in violation of General Statutes §§ 53a-8 and 53a-54a (a), assault in the first degree as an accessory in violation of General Statutes §§ 53a-8 and 53a-59 (a) (1), conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a) and 53a-54a (a), tampering with a witness in violation of General Statutes § 53a-151 (a) and bribery of a witness in violation of General Statutes § 53a-149 (a).[1] On appeal, the defendant claims that the trial court improperly (1) admitted into evidence an out-of-court statement that had been given by Keith Bryant, a witness to the murder and the assault, and (2) refused to admit

---

[1] The defendant was acquitted of a second charge of tampering with a witness in violation of General Statutes § 53a-151 (a), and a charge of conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-59 (a) (1).

an out-of-court statement that had been given by Danny Beverly, who also had been charged in connection with the events at issue.[2] We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. On November 26, 1996, at approximately 1 p.m., Tyrell Blackwell, Sterling Cole and Roosevelt Green were conversing outside Willie Wilson's house at 154 Rosette Street in New Haven. Soon thereafter, Keith Bryant, who is not related to the defendant, arrived and spoke with Green, a friend of Bryant. While Bryant and Green were talking, the defendant approached, driving a navy blue Buick Park Avenue automobile. He was accompanied by Beverly, who was seated in the back on the driver's side. The defendant stopped the Buick outside Wilson's house.

Cole approached the Buick and saw that the defendant was the driver and that Beverly was in the backseat. The defendant, who was known by witnesses as "Jizzy Vance," told Cole that he had been planning to kill somebody, but had recently reconsidered. Keith Bryant, who was still talking to Green, heard the defendant or Beverly say, "Hurry up, hurry up, what you gonna do?"

Immediately thereafter, Beverly exited the Buick, walked toward Green and fired three or four gunshots at him. Keith Bryant saw Beverly retrieve some of the spent shells and get back into the Buick. The Buick, which was still being operated by the defendant, then sped away.

---

[2] The court ordered that the defendant and Beverly be tried separately. See *Bruton* v. *United States*, 391 U.S. 123, 126, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968) (holding that defendant's rights under confrontation clause of sixth amendment to United States constitution were violated when trial court admitted into evidence at joint trial confession of nontestifying codefendant that also incriminated defendant).

One of the gunshots struck Blackwell, killing him. Another struck Green, the intended victim, causing a catastrophic injury to one of his hands. At the scene, Green stated that he had been shot by Jizzy Vance (the defendant) and Danny Beverly. Additional facts will be discussed where relevant to the issues on appeal.

I

The defendant claims that the court improperly admitted Keith Bryant's out-of-court statement. He argues initially that the court improperly admitted the statement for substantive purposes under the rule of *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). The defendant also argues, in the alternative, that the admission of the statement violated his right to due process as guaranteed by article first, § 8, of the constitution of Connecticut.[3]

The following additional facts are relevant to our resolution of this claim. On December 4, 1996, six days after the shooting, Keith Bryant gave an oral statement to two detectives from the New Haven police department. In his statement, which the detectives recorded, Bryant incriminated the defendant and Beverly. At the defendant's trial, Keith Bryant testified, and the state moved to have his statement admitted into evidence for substantive purposes under the *Whelan* rule. The court, over the defendant's objection, granted the state's request.

A

The defendant argues that the court improperly admitted Bryant's statement under *Whelan*, "absent any showing of its reliability."

---

[3] Article first, § 8, of the constitution of Connecticut provides in relevant part: "No person shall be . . . deprived of life, liberty or property without due process of law . . . ."

"In *Whelan*, [our Supreme Court] adopted an exception to the hearsay rule allowing the substantive use of a prior inconsistent written statement[4] of a nonparty witness if the declarant: (1) signed the statement; (2) had personal knowledge of the facts set forth in [his] statement; and (3) testifies at trial and is subject to cross-examination." *State* v. *Borrelli*, 227 Conn. 153, 158–59, 629 A.2d 1105 (1993).

In the present case, the defendant seeks to further his argument by alleging that police interviews, including the one during which Keith Bryant's statement was recorded, have "built-in factors that work against an assumption of reliability," rendering them "inherently coercive." He does not, however, challenge the court's finding that Bryant's statement satisfied the *Whelan* requirements previously stated.

"As with any statement that is admitted into evidence under a hearsay exception, a statement that satisfies the *Whelan* criteria may or may not be true *in fact*. But, as with any other statement that qualifies under a hearsay exception, it nevertheless is admissible to establish the truth of the matter asserted because it falls within a class of hearsay evidence that has been deemed sufficiently trustworthy to merit such treatment. Thus, as with all other admissible nonhearsay evidence, [our Supreme Court] allow[s] the fact finder to determine whether the hearsay statement is credible upon consideration of all the relevant circumstances. Consequently, once the proponent of a prior inconsistent statement has established that the statement satisfies the requirements of *Whelan*, [as the state has done in the present case], that statement, like statements

---

[4] "[A] tape recording of a prior statement may be admitted even though it was not signed because 'the recording of the witness' voice imparts the same measure of reliability as a signature.'" *State* v. *Borrelli*, 227 Conn. 153, 158–59 n.5, 629 A.2d 1105 (1993), quoting *State* v. *Woodson*, 227 Conn. 1, 21, 629 A.2d 386 (1993).

satisfying the requirements of other hearsay exceptions, is presumptively admissible." (Emphasis in original.) *State* v. *Mukhtaar*, 253 Conn. 280, 306, 750 A.2d 1059 (2000). Accordingly, the state was not required to make a showing of reliability beyond satisfying the criteria of *Whelan* to secure proper admission of Bryant's statement.

B

The defendant also argues that his right to due process, as guaranteed by article first, § 8, of the constitution of Connecticut, was violated when the court admitted Bryant's statement. The defendant specifically alleges that "it offends fundamental fairness to permit the state to introduce for substantive purposes a statement of a [nonparty] witness when only one party [i.e., the state] was present at the time the statement was given." Because our review of the record reveals that this claim is unpreserved,[5] we will begin our analysis by considering the defendant's request for review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

"Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error only if all of the

---

[5] At trial, the defendant raised a similar due process challenge; however, in so doing, he never mentioned the Connecticut constitution and appeared, instead, to be claiming that the admission of Keith Bryant's statement violated his right to due process as guaranteed by the fourteenth amendment to the United States constitution. In his brief to this court, the defendant claims, for the first time, that the state due process clause offers more extensive protection than the federal due process clause and that the *Whelan* rule, which deals with the admissibility of hearsay evidence, runs afoul of the fundamental fairness guarantee of the state due process clause when its application allows the admission into evidence of statements given to the police when no one was present to represent the interests of the defendant. "[R]eview of evidentiary rulings made by the trial court is limited to the specific legal ground raised in the objection." (Internal quotation marks omitted.) *State* v. *Prioleau*, 235 Conn. 274, 310, 664 A.2d 743 (1995). Consequently, we conclude that the defendant's state due process claim is unpreserved.

following conditions are met: '(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt.' Id. 'The first two requirements involve a determination of whether the claim is reviewable; the second two requirements involve a determination of whether the defendant may prevail.' *State* v. *Woods*, 250 Conn. 807, 815, 740 A.2d 371 (1999). This court, however, is free to dispose of a *Golding* claim by focusing on the condition that appears most relevant under the circumstances of the case. *State* v. *Pinnock*, 220 Conn. 765, 778, 601 A.2d 521 (1992)." *State* v. *Eaton*, 59 Conn. App. 252, 269, 755 A.2d 973, cert. denied, 254 Conn. 937, 761 A.2d 763 (2000).

Although the record is adequate to review the defendant's claim, he nonetheless fails to qualify for review under *Golding* because he has not cited any law to support his position that his claim rises to the level of a constitutional violation. Moreover, we are not aware of any authority that supports his position. "[I]t would trivialize the constitution to transmute a nonconstitutional claim into a constitutional claim simply because of the label placed on it by a party or because of a strained connection between it and a fundamental constitutional right." (Internal quotation marks omitted.) *State* v. *Dash*, 242 Conn. 143, 152, 698 A.2d 297 (1997). Thus, because the defendant has not demonstrated that his claim alleges the violation of a fundamental constitutional right, we conclude that the defendant has failed to satisfy the second prong of *Golding*. Accordingly, we decline the defendant's invitation to examine this issue as a state constitutional question.

## II

The defendant also claims that the court improperly refused to admit Beverly's out-of-court statement. He argues that the court's refusal to admit that evidence contravened either the hearsay exception for statements against penal interest or the residual exception to the hearsay rule.[6] We disagree.

The following additional facts are relevant to our resolution of this claim. On December 5, 1996, seven days after the shooting, Beverly gave an oral statement to two detectives from the New Haven police department. In his statement, which was recorded, Beverly described the incident as follows. He was wearing a necklace as he was walking along Rosette Street when Green approached and asked him for it. Moments later, Green brandished a gun and a struggle ensued. Beverly, after wresting the gun from Green, fired it twice. One of the gunshots struck Green. Beverly then dropped the gun and ran along Rosette Street toward Hurlburt Street. When he reached the intersection, he encountered the defendant, whom he had seen sitting in a parked, blue Buick Park Avenue in the center of Rosette Street at the time of the shooting. The defendant, who was driving the Buick along Rosette Street, promptly gave him a ride to the home of Beverly's aunt, which was at the intersection of Hurlburt Street and Washington Street.

At trial, the defendant called Beverly as a witness. Upon taking the witness stand, Beverly invoked his fifth

---

[6] In his brief to this court, the defendant claims also that his right to due process under the fourteenth amendment to the United States constitution was violated when the following combination of events occurred: (1) the state caused his case to be tried before Beverly's by "manipulat[ing] . . . the[ir] order," and (2) the court subsequently declined to relax the rules of evidence and permit him to introduce Beverly's out-of-court statement into evidence. During oral argument, however, the defendant withdrew that claim.

amendment privilege against compulsory self-incrimination.[7] The court found that a murder charge was pending against Beverly that related to the November 26, 1996 shooting. Accordingly, the court ruled that Beverly's exercise of his fifth amendment privilege was valid and that he was unavailable to testify. It also declined to admit Beverly's statement into evidence.

"A trial court's ruling on the admissibility of evidence is entitled to great deference and will be overturned only if a clear abuse of the court's discretion is shown and the defendant shows that the ruling caused substantial prejudice or injustice." *State* v. *Lewis*, 245 Conn. 779, 804 n.23, 717 A.2d 1140 (1998). An appellate tribunal is required to make every reasonable presumption in favor of upholding the trial court's ruling. Id., citing *State* v. *Hines*, 243 Conn. 796, 801, 709 A.2d 522 (1998). With that standard of review in mind, we now address the defendant's argument that the court improperly failed to admit Beverly's statement under either of the two exceptions to the hearsay rule that are at issue in this appeal.

A

"The law regarding the admissibility of third party statements against interest is well settled. A *trustworthy* third party statement exculpatory of the accused and against the penal interest of the declarant is admissible at the trial of the accused if the declarant is unavailable. . . . The determination of whether such a statement is sufficiently trustworthy to be admitted into evidence at trial lies within the sound discretion of the trial court. . . .

"Four considerations have been deemed relevant when examining the trustworthiness of declarations

---

[7] The fifth amendment to the United States constitution provides in relevant part: "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ."

against penal interest: (1) the time of the declaration and the party to whom the declaration was made; (2) the existence of corroborating evidence in the case; (3) the extent to which the declaration is really against the declarant's penal interest; [and] (4) the availability of the declarant as a witness." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State v. Lopez*, 239 Conn. 56, 70–71, 681 A.2d 950 (1996).

In the present case, focusing on the third consideration used in examining the trustworthiness of statements against penal interest, the court ruled that Beverly's statement did not constitute a statement against penal interest because it did not significantly inculpate Beverly, the declarant. Our examination of Beverly's statement reveals that it is comprised principally of responses that exculpate the declarant. In his statement, Beverly indicated that during Green's failed attempt to rob him of his necklace at gunpoint, he fired two gunshots at Green in self-defense. Beverly also stated that the gun he fired was the same gun that Green used to threaten him. At the time Beverly gave his statement, however, he must have known that people at the scene had seen him fire a gun at Green because Green's friends, specifically, Cole, Blackwell and Keith Bryant, were in the immediate area. Analyzed in that context, the statement, which Beverly gave one week after the shooting, resembles more of an attempt by Beverly to justify his actions in the presence of police detectives than it does a statement against his interests. For that reason, we conclude that the third consideration employed in examining the trustworthiness of statements against penal interest, as well as the first consideration, i.e., the time of the declaration and the party to whom the declaration was made, counsel against admitting Beverly's statement.

We now turn to the second consideration used in examining the trustworthiness of statements against

penal interest, that is, whether there is corroborating evidence in the case. "The corroboration requirement . . . is significant and goes beyond minimal corroboration." *State* v. *Rosado*, 218 Conn. 239, 249, 588 A.2d 1066 (1991). "Third party statements exculpating an accused are [especially] suspect . . . ." Id. In his statement, Beverly asserted that he and the defendant had arrived at Rosette Street separately, and that the defendant had not been involved in the shooting. Beverly also asserted that the defendant was not aware that a shooting had occurred at the time he offered Beverly a ride. We conclude that Beverly's statement exculpated the defendant and, therefore, was suspect. Consequently, Beverly's statement needed to be corroborated by evidence that clearly indicated it was trustworthy before it properly could be admitted. See id.

Our examination of the record reveals that Beverly's statement was not significantly corroborated by the evidence. For example, Beverly asserted in his statement that he had dropped the gun at the scene after firing it twice at Green. There was, however, no direct or circumstantial evidence that corroborated that part of Beverly's statement. In fact, there is evidence to the contrary: The police did not recover a gun at the scene despite the fact that a police officer arrived there on foot moments after the shooting. Consequently, the second consideration, too, counsels against admitting Beverly's statement.

Our inquiry need not proceed further, as we are satisfied that the untrustworthiness of Beverly's statement was substantial and obvious. Accordingly, we conclude that the court did not abuse its sound discretion when it declined to admit Beverly's statement under the hearsay exception for statements against penal interest.

B

The law regarding the admissibility of hearsay under the residual exception to the hearsay rule also is well

settled. "The 'residual,' or 'catch-all,' exception to the hearsay rule allows a trial court to admit hearsay evidence not admissible under any of the established exceptions if: (1) there is a reasonable necessity for the admission of the statement, and (2) the statement is supported by the equivalent guarantees of reliability and trustworthiness essential to other evidence admitted under the traditional hearsay exceptions." (Internal quotation marks omitted.) *State* v. *Lewis*, supra, 245 Conn. 805.

Our examination of the record reveals that Beverly's statement "was not imbued with guarantees of reliability and trustworthiness sufficient to support its admission." *State* v. *Outlaw*, 216 Conn. 492, 499, 582 A.2d 751 (1990). Our earlier inquiry revealed that Beverly's statement was not trustworthy. Additionally, Beverly's apparent friendship with the defendant further undermined the reliability and trustworthiness of Beverly's statement. See *State* v. *Oquendo*, 223 Conn. 635, 668, 613 A.2d 1300 (1992). Thus, we cannot say that the circumstances surrounding Beverly's statement established "a motivational basis for truth-telling equivalent to those associated with the traditional exceptions to the hearsay rule . . . ." (Internal quotation marks omitted.) Id. Accordingly, we conclude that the trial court did not abuse its broad discretion when it declined to admit Beverly's statement under the residual exception to the hearsay rule.

The judgments are affirmed.

In this opinion the other judges concurred.