MEREDITH FINAN *v.* JOHN FINAN
(AC 26463)

DiPentima, Harper and Hennessy, Js.

Argued October 24, 2006—officially released April 3, 2007

*Charles D. Ray*, with whom, on the brief, was *Suzanne M. Raudenbush*, for the appellant (plaintiff).

*Sperry A. DeCew*, for the appellee (defendant).

*Opinion*

DiPENTIMA, J. The plaintiff, Meredith Finan, appeals from the judgment of the trial court dissolving her marriage to the defendant, John Finan. On appeal, the plaintiff claims that the court improperly (1) entered financial orders because it (a) failed to value the parties' interests with respect to the marital home as of the date of dissolution, (b) relied on the parties' proposed findings of fact, which contained several inaccuracies, (c) failed to require the defendant to provide a value for certain stock options, (d) refused to admit into evidence a report detailing the defendant's preseparation dissipation of marital assets, and (e) ordered time limited alimony that was inconsistent with the facts and inequitable; (2) ordered the parties to file a joint income tax return for the year prior to the dissolution; and (3) failed to consider security for the defendant's alimony obligation. We vacate the trial court's order with respect to the income tax return and affirm the judgment in all other respects.

The parties married on September 11, 1982, and, at the time of the trial, had three children, of which two were minors. The court rendered judgment dissolving the marriage on March 11, 2005. The court found that the marriage had broken down irretrievably without attributing fault to either party as to the cause of the breakdown.

The court entered orders regarding property distribution, alimony, child support and other miscellaneous matters. As part of the dissolution decree, the court ordered the defendant to pay to the plaintiff "unallocated alimony and child support in equal semimonthly installments on the first and fifteenth of each month, the annual sum of $95,000 based on his base salary of $225,000." This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff's first claim is comprised of five separate challenges to the financial orders entered by the court as well as the factual bases underlying those orders. We conclude that the court's financial orders were proper.

We review each of these claims under the same well settled standard of review. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Demartino* v. *Demartino*, 79 Conn. App. 488, 492, 830 A.2d 394 (2003).

"A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria. . . . In reviewing the trial court's decision under [an abuse of discretion] standard, we are cognizant that [t]he issues involving financial orders are entirely interwoven. The rendering of judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks

omitted.) *Kunajukr* v. *Kunajukr*, 83 Conn. App. 478, 481, 850 A.2d 227, cert. denied, 271 Conn. 903, 859 A.2d 562 (2004).

We apply the abuse of discretion standard of review because it "reflects the sound policy that the trial court has the unique opportunity to view the parties and their testimony, and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, including such factors as the demeanor and the attitude of the parties." *Casey* v. *Casey*, 82 Conn. App. 378, 383, 844 A.2d 250 (2004).

## A

The plaintiff first claims that the court abused its discretion when it entered its order with respect to the parties' marital home. Specifically, the plaintiff claims that the court's order (1) fails to value the parties' respective interests at the time of dissolution, (2) requires the plaintiff to fund the defendant's investment and (3) creates a potential for future disputes. We are not persuaded.

The following additional facts are necessary for our resolution of the plaintiff's claim. In its memorandum of decision, the court entered the following order with respect to the parties' marital home. "The [plaintiff] shall have the sole right of occupancy in the marital residence located at Sparrow Lane, Greenwich . . . and she shall indemnify [the defendant] in connection with the expenses associated with the occupancy of said residence. The marital residence shall be placed on the market no later than ninety days from the date of graduation from college of the youngest child, but no later than March 1, 2012, whichever occurs first, unless the [plaintiff] agrees to sell said property at an earlier date. The defendant shall be entitled to 25 percent of the net equity once the marital residence is sold, after payment of all expenses related to such sale. If

the [plaintiff] wishes to retain full ownership of said property on that date, she shall have the right to pay [the defendant] a sum equivalent to 25 percent of the net value at that time after calculating all expenses due on the property, including the expenses of selling said property. If the [plaintiff] does not wish to retain said property, she shall give [the defendant] the right of first refusal to purchase her interest at 75 percent of any agreed net price or based on the appraised value of said property."

The plaintiff essentially makes a wholesale attack on the court's order with respect to its disposition of the marital home and posits several scenarios in which the court's order would seemingly frustrate the parties. We do not find those scenarios persuasive. With respect to her first two arguments, which are that the court failed to value the parties' respective interests at the time of dissolution and that its order requires the plaintiff to fund the defendant's investment, the plaintiff is essentially arguing that any capital improvements made to the home and mortgage payments made by the plaintiff would not be accounted for in a future sale. In support of this argument, the plaintiff suggests that our holding in *Osakowicz* v. *Osakowicz*, 57 Conn. App. 807, 810, 750 A.2d 1135 (2000), is dispositive of this claim and requires reversal of the court's order with respect to the marital home. In *Osakowicz*, the trial court set a fixed sales price, $180,000, for the marital home that was based on the stipulated agreement of the parties. Pursuant to the court's order, if the plaintiff chose to sell the property, the defendant had the right to purchase it for the stipulated amount. If the property was not sold by the time the youngest child reached maturity, the defendant could then purchase the home for the same stipulated price. Id., 811. We remanded the case to the trial court to refigure this calculation on the basis of

its failure to account for normal market fluctuations. Id., 811–12.

In the present case, the court did not order a fixed price for the sale of the home but rather used a percentage of the home's value at the time of any future sale. That distinction eliminates any inequity arising from future improvements or mortgage payments made to the property.[1] "The purpose of a property division pursuant to a dissolution proceeding is to unscramble existing marital property in order to give each spouse his or her equitable share at the time of dissolution." *Smith* v. *Smith*, 249 Conn. 265, 275, 752 A.2d 1023 (1999). In its memorandum of decision, the court meticulously detailed the parties' financial situation, valued the home at $597,979.93 and took note of the plaintiff's down payment of $210,000. On the basis of the record, we conclude that the court properly valued the parties' respective interests in the marital home at the time of dissolution and that its order provided an equitable division of the marital home. As to the plaintiff's assertion that the court's order will cause future disputes between the parties, we merely note that unfortunately, some level of discord naturally flows from most marital dissolutions. Accordingly, we conclude that the court did not abuse its discretion with respect to its order relating to the marital home.

B

The plaintiff next claims that the court improperly relied on the parties' proposed findings of fact, which

[1] The plaintiff contends that it is inequitable for the court to have allowed the defendant the option to purchase the home at a future date on the basis of any "agreed net price or, based on the appraised value of said property." That contention warrants little discussion. The decision to either remain in the home until the time specified by the court or to sell it prematurely was put entirely within the plaintiff's control. If the plaintiff decided to sell, the defendant had the option of purchasing. If the parties could not agree on a particular net price, then it was reasonable for the court to order that the parties rely on the appraised value.

contained several inaccuracies. Specifically, the plaintiff argues that there are twenty-six instances in which the court improperly relied on the defendant's proposed findings of fact, three instances in which it relied on the plaintiff's proposed findings of fact and one instance in which the court relied on the plaintiff's proposed orders.

There can be no doubt that verbatim adoption, from another source, of the fact section "invites error or sloppy analysis on the judge's part. More importantly, the appearance of justice is just as important as the reality, and a verbatim adoption of the facts [proffered] by one of the advocates invites a public suspicion of the trial court's decision. The perceptions by the public and by the losing litigant of our system of justice are surely not enhanced by such a practice." *Grayson* v. *Grayson*, 4 Conn. App. 275, 284, 494 A.2d 576 (1985), appeal dismissed, 202 Conn. 221, 520 A.2d 225 (1987) (certification improvidently granted). As this court has most recently reiterated, "a verbatim adoption of the findings proposed by a prevailing party is not a per se finding of a denial of a fair trial. . . . Instead, [t]he ultimate test as to the adequacy of [the] findings is whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for the decision and whether they are supported by evidence." (Citation omitted; internal quotation marks omitted.) *In re Halle T.*, 96 Conn. App. 815, 825–26, 902 A.2d 670, cert. denied, 280 Conn. 924, 908 A.2d 1087 (2006); see also *MacCalmont* v. *MacCalmont*, 6 Conn. App. 117, 118, 503 A.2d 624 (1986). We have rejected review that would give less weight to the court's findings in these types of cases "because a conscientious appellate court will make such examination of the record as is necessary in every case in which it is claimed that the finding is not supported by the evidence." *Grayson* v. *Grayson*, supra, 285.

The plaintiff has provided a spreadsheet detailing twenty-six instances in which she claims the court did precisely that which we have just strongly cautioned against. Although we in no way condone the court's verbatim adoption of any of the facts set forth by the defendant, that alone is not enough to warrant reversal. See id. Although the plaintiff cites a total of thirty instances in which the court supposedly adopted the proposed facts from either her own or the defendant's proposed findings of fact,[2] she asserts that in only five of those thirty instances were the court's findings not supported by the evidence presented at trial.

In the first two instances, the court attributed additional bonus payments to the defendant of $100,000 in 1997 and $105,000 in 2003 that were deposited to a joint account. In the third instance, the court included $105,000 as deferred compensation payable in 2005. We agree with the plaintiff that those findings are not supported by the record. "Where, however, some of the facts found [by the trial court] are clearly erroneous and others are supported by the evidence, we must examine the clearly erroneous findings to see whether they were harmless, not only in isolation, but also taken as a whole. . . . If, when taken as a whole, they undermine appellate confidence in the court's fact finding process, a new hearing is required." (Internal quotation marks omitted.) *Lambert* v. *Donahue*, 78 Conn. App. 493, 507, 827 A.2d 729 (2003); *Owens* v. *New Britain General Hospital*, 32 Conn. App. 56, 78–79, 627 A.2d 1373 (1993), aff'd, 229 Conn. 592, 643 A.2d 233 (1994).

The court awarded unallocated alimony and child support on the basis of the defendant's base salary and any future cash bonus or deferred income. First, the

[2] We note that most of the instances in which the plaintiff claims that the court adopted findings from the defendant's or her own proposed findings contain certain facts that have only a finite number of ways of being stated.

court awarded the plaintiff $95,000 annually on the basis of its finding that the defendant's base salary for 2005 would be $225,000. The plaintiff does not challenge that finding. Second, the court awarded the plaintiff 35 percent of any cash bonus or deferred income awarded to the defendant "commencing with deferred income awarded to him for the year 2004." We note as well that the court ordered that all "remaining assets of the parties jointly owned," which included any joint accounts, be divided equally between them. We fail to see how the court's findings regarding previous bonus payments paid to the defendant and deposited in a joint account prior to 2004 negatively affect the plaintiff's interest. As for the court's finding that the defendant would receive deferred compensation in 2005 for $105,000, we again fail to see how that finding negatively affects the plaintiff's interests. The court awarded the plaintiff a percentage amount of future cash bonuses and deferred compensation paid to the defendant rather than a set dollar value. On the basis of our careful review of the record, we are not persuaded that the challenged findings either formed the basis of the court's orders or were harmful. See *Lambert* v. *Donahue*, supra, 78 Conn. App. 507. The court's findings as a whole provide more than ample support for it's financial orders. We conclude that the inaccuracies in the court's findings as to the defendant's bonus payments and deferred compensation do not undermine our confidence in the court's fact-finding process. See id.[3] Accordingly, we conclude that its error was harmless.

C

The plaintiff next claims that the court failed to require the defendant to provide a value for certain

[3] The remaining instances in which the plaintiff argues that the court improperly relied on proposed facts are equally unpersuasive. Whether the court recited the exact date with regard to the plaintiff's period of employment or when the parties first consulted an estate planning attorney does

stock options. Specifically, the plaintiff argues that the court failed to make a finding regarding the value of the defendant's employee stock options before awarding them to the defendant. We are not persuaded.

We first note that "no single rule or formula is applicable to every dissolution case involving employee stock options." (Internal quotation marks omitted.) *Wendt* v. *Wendt*, 59 Conn. App. 656, 667, 757 A.2d 1225, cert. denied, 255 Conn. 918, 763 A.2d 1044 (2000). "As a general framework, [t]here are three stages of analysis regarding the equitable distribution of each resource: first, whether the resource is property within [General Statutes] § 46b-81 to be equitably distributed (classification); second, what is the appropriate method for determining the value of the property (valuation); and third, what is the most equitable distribution of the property between the parties (distribution)." (Internal quotation marks omitted.) *Bender* v. *Bender*, 258 Conn. 733, 740, 785 A.2d 197 (2001). As noted, we review the court's financial orders under the abuse of discretion standard. See *Kunajukr* v. *Kunajukr*, supra, 83 Conn. App. 481.

In its memorandum of decision, the court found that the value of the defendant's stock options were "undetermined." Evidence was proffered at trial through the defendant's testimony that the stock options he owned through his employer were "both under water." A stock option that is "under water" has no present value.[4] Therefore, the court properly treated the stock options as property subject to distribution but with an undetermined cash value as stated in its memorandum of decision.

not impact its financial orders as a whole. Accordingly, we conclude that those incorrect findings were harmless as well.

[4] "When the market value of a stock sinks below the exercise price of an option, the option has no value or is 'under water.' " See Bankrate; Stock Options Glossary; available at http://www.bankrate.com/brm/news/insurance/benefits2004/stock-options-terms1.asp (accessed 01/16/07).

## D

The plaintiff next claims that the court improperly refused to admit into evidence a report detailing the defendant's preseparation dissipation of marital assets. Specifically, the plaintiff claims that the court failed to consider evidence that the defendant dissipated marital assets by spending large sums of money prior to the parties' separation. We decline to review this claim because the record is inadequate.

During the course of the trial, the plaintiff submitted a report that contained certain expenditures made by the defendant. The report was entered into evidence over the defendant's objection. Upon a renewed objection, the court ordered that certain parts of the report were to be redacted and the report resubmitted. The first report was stricken and the new report was then submitted in its place. The defendant contends that the first report is not part of the record because it was stricken and replaced with the second redacted report. The first report, which contains the evidence that the plaintiff now contends should have been considered by the court, was neither entered as a full exhibit nor marked for identification after it was replaced by the second report and, therefore, is not part of the record.[5]

"The duty to provide this court with a record adequate for review rests with the appellant. Practice Book § 61-10. . . . The appellant shall determine whether the entire trial court record is complete, correct and otherwise perfected for presentation on appeal. . . . Conclusions of the trial court cannot be reviewed where the appellant fails to establish through an adequate

---

[5] We note that the plaintiff could have preserved the original report as part of the record by marking it for identification at trial or, on the basis of the facts and circumstances of this case, at a later time by way of a motion for rectification pursuant to Practice Book § 66-5. See, e.g., *State* v. *Irizarry*, 95 Conn. App. 224, 239 n.22, 896 A.2d 828, cert. denied, 279 Conn. 902, 901 A.2d 1224 (2006).

record that the trial court incorrectly applied the law or could not reasonably have concluded as it did . . . . The purpose of marking an exhibit for identification is to preserve it as part of the record and to provide an appellate court with a basis for review." (Citation omitted; internal quotation marks omitted.) *Daigle* v. *Metropolitan Property & Casualty Ins. Co.*, 257 Conn. 359, 364, 777 A.2d 681 (2001).

We conclude that because the plaintiff did not offer the report for identification purposes, the record is incomplete and, therefore, we cannot properly review the plaintiff's claim.

E

The plaintiff's final claim with respect to the court's financial orders is that the court improperly ordered time limited alimony that was inconsistent with the facts and inequitable. We are not persuaded.

With respect to unallocated alimony and child support, the court made the following order: "This order shall commence on March 1, 2005, and will continue until the death of either party, the plaintiff's remarriage or cohabitation as provided in our statute or thirteen years from March 1, 2005, whichever first occurs. This order shall be nonmodifiable as to term. It shall not be a basis for modification by [the defendant] unless the [plaintiff's] gross salary or employment income is in excess of $45,000, in which event, the defendant may seek a modification. If the [plaintiff's] income exceeds $45,000, the [defendant] shall be entitled to a credit toward his unallocated and support payments of 50 percent of such earnings by the [plaintiff]. . . . If she earns $60,000, he may deduct 50 percent of $15,000 or $7500 from his payments. In addition to the unallocated alimony and child support recited above, the defendant shall pay to the plaintiff the following sums:

"3. The plaintiff . . . is awarded 35 percent of any cash bonus or deferred income awarded to the defendant as of the date of payment to him, commencing with deferred income awarded to him for the year 2004. She shall have the right to and be paid for the next six years, including the year 2004 and ending in the year 2009. The court will retain jurisdiction of any [qualified domestic relations order] or other necessary documents necessary to carry out this order."

Time limited alimony is often awarded. "[Our Supreme Court] has dealt with challenges to an award of time limited alimony on numerous occasions. . . . The trial court does not have to make a detailed finding justifying its award of time limited alimony. . . . Although a specific finding for an award of time limited alimony is not required, the record must indicate the basis for the trial court's award. . . . There must be sufficient evidence to support the trial court's finding that the spouse should receive time limited alimony for the particular duration established. If the time period for the periodic alimony is logically inconsistent with the facts found or the evidence, it cannot stand." (Internal quotation marks omitted.) *Nashid* v. *Andrawis*, 83 Conn. App. 115, 122–23, 847 A.2d 1098, cert. denied, 270 Conn. 912, 853 A.2d 528 (2004); *Ippolito* v. *Ippolito*, 28 Conn. App. 745, 751–52, 612 A.2d 131, cert. denied, 224 Conn. 905, 615 A.2d 1047 (1992). In addition to being awarded to "provide an incentive for the spouse receiving support to use diligence in procuring training or skills necessary to attain self-sufficiency," time limited alimony is also appropriately awarded "to provide interim support until a future event occurs that makes such support less necessary or unnecessary." (Internal quotation marks omitted.) *Ippolito* v. *Ippolito*, supra, 752–53. We have stated previously that the type of future event considered to be a valid purpose for the award of time limited alimony award includes providing interim

support until any minor child reaches the age of majority. Id., 753.

The plaintiff argues that the court failed to make a finding with respect to her future employment prospects and that its time limited alimony award was entirely speculative. On the basis of our review of the record, we conclude that the court did not abuse its discretion in awarding the plaintiff alimony for a period of thirteen years, nonmodifiable as to term. Although the court did not specifically state the basis for its award of time limited alimony, the record discloses evidence that supports a reasonable rationale for such an award. The plaintiff was forty-nine years old and in good health at the time of the dissolution. She previously had a career in the advertising industry negotiating television and radio contracts. Additionally, at the time of dissolution, the parties had two minor children, ages fifteen and seventeen. In thirteen years, the youngest child will be twenty-eight. The thirteen years of alimony is reasonable in light of those factors.

We therefore conclude that the court did not abuse its discretion when it awarded the plaintiff alimony for a period of thirteen years and that there is sufficient evidence in the record to support the award.

## II

The plaintiff's remaining two claims on appeal are that the court improperly (1) ordered the parties to file a joint income tax return for the year prior to the dissolution and (2) failed to consider security for the defendant's alimony obligation. Because these two claims are severable from the preceding challenges to the court's financial orders, we review them together. We agree with the first part of the plaintiff's argument but are not persuaded by the second part.

With respect to the first of these claims, the court ordered that the parties "shall file a joint tax return for

the year 2004 and shall split any refund equally or share any tax liability proportionate to their respective income listed by each party." As our Supreme Court has established, "[a] trial court has the authority to order a party to file a joint federal personal income tax return if there was a prior agreement between the parties to do so. See *Wolk* v. *Wolk*, 191 Conn. 328, 330, 464 A.2d 780 (1983)." *Kane* v. *Parry*, 24 Conn. App. 307, 315, 588 A.2d 227 (1991). In the present case, the record shows no evidence of a prior agreement between the parties to file a joint income tax return. Unlike the situation presented in *Kane*, the defendant in the present appeal has represented to this court that both parties have filed separate tax returns for the year 2004. The plaintiff, however, claims that the record is devoid of any evidence that either party has filed such a return. We agree that the record does not contain evidence of either party's filing an income tax return for 2004. As the court's order with respect to the parties' filing a joint income tax return is in contravention of established precedent, we must vacate that specific order.[6]

The plaintiff's second argument, which is that the court failed to consider security for the defendant's alimony obligation, is unavailing. The court made the following order with respect to life insurance: "the [defendant] shall maintain his employer provided life insurance, the face amount of which is three times his annual salary." Previously in its order, the court made

---

[6] The plaintiff has not asked this court to reverse all of the trial court's financial orders on the basis of the order that the parties file a joint income tax return, nor would we do so if asked. We note that every improper order "does not necessarily merit a reconsideration of all of the trial court's financial orders. A financial order is severable when it is not in any way interdependent with other orders and is not improperly based on a factor that is linked to other factors." (Internal quotation marks omitted.) *Montoya* v. *Montoya*, 280 Conn. 605, 617, 909 A.2d 947 (2006); *Smith* v. *Smith*, supra, 249 Conn. 277. Clearly, the court's order with respect to the income tax return is severable.

the determination that the defendant's base salary was $225,000. The record shows that the defendant reported that his employer group life insurance on his financial affidavit has a $225,000 death benefit, with $450,000 for accidental death only. Contrary to the plaintiff's assertions, there is no indication that the court misinterpreted the defendant's financial affidavit when ordering him to maintain his life insurance policies, of which the total face amount equaled three times his annual salary.

The judgment is vacated with respect to the parties' filing a joint income tax return for 2004; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.