**Commonwealth v. Shaffer.**

*Tabia Cole*, for plaintiff.
*Ronald L. Collins*, for defendant.

FORADORA, *J.*, August 16, 2012—Introduction

The defendant, Mark Alan Shaffer ("Shaffer"), was charged with felony and misdemeanor drug offenses stemming from events that occurred on July 15, 2011.

He was charged after the police found drugs and drug paraphernalia while searching his vehicle. Shaffer later filed an omnibus pre-trial motion for relief, alleging that the search warrant authorizing the search was invalid because the affiant failed to specify how the confidential informant was reliable or the basis for his knowledge, and also because it contained materially false and incorrect information, he argued, the affidavit did not establish probable cause. By way of relief, he asked the court to suppress all evidence obtained as a result of the search warrant.

At a hearing held June 15, 2012, counsel collectively proffered copies of the search warrant, the deposition testimony of Trooper John Eisman ("Eisman") of the Pennsylvania State Police, and a document confirming that at least one fact he alleged in the affidavit was incorrect. The court issued a briefing schedule, and with both briefs now filed, the question is ripe for decision.

### Findings of Fact

On July 15, 2011, Trooper Eisman applied to magisterial district Judge David B. Inzana for a search warrant to search a maroon 2000 Dodge Durango Sport for evidence of drugs and drug paraphernalia. In his affidavit of probable cause, he swore to the following factual averments:

1. On July 15, 2011 at approx.. 1500 hrs. I received information from Trooper Jared Thomas advising the following: A Mark Alan Shaffer is currently going to the Pittsburgh area to obtain several bricks of heroin and bringing them back to the Reynoldsville area. Tpr. Thomas further advised that Shaffer is operating

a maroon Dodge Durango that belongs to Christina Ritzie. Tpr. Thomas advised that he has been given this information from a reliable confidential informant (C.I.). Tpr. Thomas advised that Shaffer would be in the vehicle alone and would be back in the area between 1800 to 1830 hours. Tpr. Thomas further advised that Shaffer would be taking SR 28 to Sr [sic] 322 into Reynoldsville.

2. On July 15, 2011 at approx.. 1530 hrs. I advised the shift supervisor Cpl. William Tangren of the information obtained from Tpr. Thomas. Cpl. Tangren, Tpr. Watt, Tpr. Breakey and I established a plan to cover the roadways into the reynoldsville [sic] area to try and intercept the Dodge Durango.

3. On July 15, 2011 at approximately 1750 hours Tpr. Breakey was operating radar along SR 322 west of the Reynoldsville Borough area. A maroon Dodge Durango matching the description came through his radar zone. Tpr. Breakey advised the other units that the vehicle had been speeding and was following it into the Reynoldsville Borough. Tpr. Breakey conducted a traffic stop at the intersection of SR 322 and SR 310 at the Uni-Mart convenience store. Tpr. Breakey, Tpr. watt [sic], Cpl. Tangren, and I were onscene [sic]. Tpr. Breakey issued Mark Shaffer a warning for the speeding infraction. I then spoke with Shaffer and advised him that I wanted him to consent to a search of his vehicle. He advised that he would not consent to a search.

4. On July 15, 2011 at 1940 hrs. I ran a criminal history check on Mark Shaffer and found him to have been

arrested in the state of Indiana for drug possession, specifically marijuana. Reference SID: IN01029847.

5. During the encounter your affiant observed in plain view inside the vehicle what appeared to be a "stamp bag" with a white residue, which this officer suspects to be heroin.

6. This officer also observed that during the course of the encounter Mr. Shaffer appeared excessively aggitated [sic] and nervous.

After Judge Inzana issued the search warrant, the police searched the vehicle and seized from under the driver's seat 250 white wax packets of heroin stamped with the words "derby days." Depo. of John Eisman, 12/19/2011, pp. 25-26. They also seized cell phones, money grams, and other items of drug paraphernalia. *Id.* at 26-27.

Prior to applying for the search warrant, Eisman had indeed spoken with Trooper Jared Thomas ("Thomas"), who advised him that a CI had just informed him that Shaffer had left to go to Pittsburgh to retrieve a large amount of heroin; that he was driving a maroon Dodge Durango owned by his wife, Christina, and that he would be returning to Reynoldsville around 6:00 p.m. to 6:30 p.m. via SR 28 North and SR 322. *Id.* at 6, 9-11.

At the time he talked to Thomas, Eisman did not know the identity of the CI, the basis for his information, or whether Thomas had used him in prior investigations. *Id.* at 8, 45. He had not obtained that information by the time he swore out his affidavit of probable cause, either. He was familiar with Mark Shaffer and his wife, however, whose

names had come up during other drug investigations. *Id.* at 5-8.

Acting on the CI's report, Trooper Richard Breakey ("Breakey") took position off of SR 322 west into Reynoldsville, and at 5:50 p.m., he saw a maroon Dodge Durango pass by and followed it to the Uni-Mart parking lot in Reynoldsville. *Id.* at 11. Consistent with what Eisman had learned from Thomas, the vehicle was registered to Christina Ritzie and being driven by Shaffer, who was the sole occupant. *Id.* at 11-12.

When Eisman arrived at Uni-Mart, he performed a cursory visual inspection of the Durango and observed a two-inch long, rectangular piece of material that he believed was an open stamp bag of heroin. *Id.* at 12-13, 35-50. When he went to retrieve it after obtaining the search warrant, however, he discovered that it was actually a blue cloth with some discoloration at the bottom, not an open stamp bag containing residue. *Id.* at 47-51. As the troopers continued their search, however, they quickly located the 250 stamp bags of heroin.

As it turned out, Eisman was also incorrect about Shaffer having an earlier drug conviction out of Indiana. The report he received, while identifying "Mark Shaffer" as the subject individual, pertained to a different Mark Shaffer. Additionally, although Eisman indicated in his affidavit that Shaffer appeared to be excessively agitated and nervous while speaking with him, he testified at his later deposition that the defendant was not overly nervous. *Id.* at 14.

Discussion

Two years ago, our Supreme Court reiterated the well-established standard applicable to search warrants. It said,

> "Pursuant to the 'totality of the circumstances' test set forth by the United States Supreme Court in *Gates*, the task of an issuing authority is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place .... It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause *in a common-sense, non-technical manner*."

*Commonwealth v. Jones*, 605 Pa. 188, 200, 988 A.2d 649, 655 (2010) (emphasis added) (quoting *Commonwealth v. Torres*, 564 Pa. 86, 97-98, 764 A.2d 532, 537-38 (Pa. 2001)). An examination of the four corners of the affidavit will reveal whether the issuing authority had a substantial basis upon which to find probable cause. *Commonwealth v. Hernandez*, 892 A.2d 11, 20 (Pa. Super. 2006), rev'd. on other grounds, 935 A.2d 649 (104 Conn. App. 710, 717) (citing *Commonwealth v. Edmunds*, 526 Pa. 374, 382, 586 A.2d 887, 891 n.3 (1991)).

That common sense, non-technical standard applies to information received from confidential informants, whose reliability and basis of knowledge may suffice to establish probable cause under one of three circumstances: 1.) where the police independently corroborate his tip; 2.) where he has provided accurate information in the past; and 3.) where he actually participated in the criminal activity. *Commonwealth v. Clark*, 611 Pa. 601, 607 28 A.3d 1284, 1288 (2011). In the first instance, "The corroboration by police of significant details disclosed by the informant in the affidavit of probable cause meets the [constitutional] threshold." *Id.* However it happens, though, probable cause must always be evaluated based on a totality of the circumstances. *Id.*

Similar to this case, the affiant in *Clark* swore to receiving information from a "reliable confidential informant" without further articulating what made the informant reliable or how he had obtained the information he had given to the police. *Id.* The police then took steps to confirm the information they had received and thereafter obtained a search warrant for the defendant's home. *Id.* at 1285-86. The trial court later suppressed the evidence on the basis that the affiant had not recited how the informant's reliability had been established or how he had obtained his knowledge of the defendant's activities. *Id.* at 1286. The Superior Court affirmed that ruling in an unpublished memorandum opinion, and our Supreme Court reversed.

*Clark* altered the landscape with respect to the quantum of information necessary to establish an informant's reliability and basis of knowledge. Specifically, the court

rejected the proposition that an affidavit of probable cause must always contain a specific incantation that the informant had previously provided information leading to an arrest. *Id.* At 1289-92. "[I]t is clear that under the totality-of-the-circumstances approach," said the court, "there is no talismanic recitation of a particular phrase with respect to 'reliability' or 'basis of knowledge' that will either be required or will suffice to conclusively establish, or conclusively disaffirm, the existence of probable cause." *Id.* At 1292.

In *Clark*, the Supreme Court faulted the lower courts for overemphasizing what the issuing magistrate knew or did not know about the confidential informant. *Id.* at 1290-91. This court will not make the same mistake. In *Clark*, the court observed that the totality of the circumstances, including the independent police investigation verifying the informant's statements, sufficiently established probable cause, the absence of a "reliability statement" notwithstanding. *Id.* at 1292. The same is true in this case.

When Judge Inzana authorized the warrant to search Shaffer's vehicle, he knew more than just what a "reliable" confidential informant had told the police. He also knew that the police had independently investigated and verified many significant details, including the color, make, and model of the vehicle he would be driving; the name of the person to whom the vehicle was registered; the route he would be travelling back to Reynoldsville; and the approximate time he would be arriving. He thus knew that the police had confirmed nearly all of the information the informant had provided. It was thus reasonable for him

to conclude that the confidential informant was indeed reliable overall and that probable cause existed to believe that his last significant piece of information—that Shaffer would be carrying heroin in the Durango—would be confirmed by a vehicle search.

Because the information appearing in the first substantive paragraph of Eisman's affidavit did indeed establish probable cause for Judge Inzana to issue the search warrant, the court need not consider the legal ramifications of the inaccuracies reflected in paragraphs two, three, and four. Pursuant to *Clark*, the fact that the police were able to substantiate the confidential informant's tip to a significant degree was sufficient, in and of itself, to create probable cause under the circumstances. Nothing more was needed. The succeeding paragraphs thus could have been omitted entirely without affecting the validity of Judge Inzana's determination.

What the defendant is left with, then, is a search warrant that was supported by probable cause to believe that the police would discover heroin in the Dodge Durango he was driving on the date in question. That being the case, the warrant was valid and there exists no basis upon which to grant Shaffer's request for suppression.

## ORDER ON DEFENDANT'S OMNIBUS PRE-TRIAL MOTION

And now, August 16, 2012, for the reasons articulated in the foregoing opinion, it is hereby ordered and decreed that the defendant's omnibus pre-trial motion is denied.